THE STATE OF OHIO, EX REL. WATKINS, *v.* QUIRK ET AL.

(No. 8591—Decided June 28, 1978.)

*Mr. William P. Michaels*, for relator.

*Mr. Carmen V. Roberto* and *Mr. John E. Codrea*, for respondents.

MAHONEY, P. J. Relator, Richard W. Watkins, seeks a writ of *mandamus* compelling respondent, John A. Ramey, clerk of council of the city of Cuyahoga Falls, to transmit a certain referendum petition to city council. We determine that the writ shall not issue.

*Facts*

The complaint originally named Robert J. Quirk, Mayor of Cuyahoga Falls, and Jerry Sloan, the then city law director, as respondents. Motions to dismiss for failure to state a claim were filed on behalf of Quirk and Sloan. A motion for summary judgment was filed by all three respondents. We granted the motions to dismiss and denied the motion for summary judgment, leaving Ramey as the sole respondent. After several pretrial conferences, the parties submitted the following agreed statement of facts:

"1. The City of Cuyahoga Falls' Charter requires ten percent (10%) of the registered voters to sign a referendum in order for said referendum to be sufficient, i. e. 2,352 valid registered voters.

"2. On February 14, 1977 the City Council of the city of Cuyahoga Falls adopted Ordinance No. 34-1977 entitled 'Accepting the application for the annexation of certain territory containing 231.6521 acres in Northampton Township to the City of Cuyahoga Falls and declaring an Emergency.'

"3. On February 25, 1977, Attorney William Hendrick, one of the circulators, held a meeting with various people in regard to the ordinance and its recall through a referendum and secured petitions from George Vaughn, Summit County Board of Elections.

"4. On February 26th and 27th circulators gathered signatures.

"5. On February 28, 1977 Clerk of Council John Ram-

ey delivered a verified copy of the ordinance in question in the evening Clerk of Council John Ramey is a part-time employee of the City Council of Cuyahoga Falls.

"6. On March 1, 1977 a verified copy of City Ordinance 34-1977 and a list of circulators was filed with Leo F. Lucas, Director of Finance for the City of Cuyahoga Falls.

"7. On March 14, 1977 Petitions 1 through 110 were filed with Respondent.

"8. On March 15, 1977 Petitions 111 through 114 were filed with Respondent.

"9. The Summit County Board of Elections certified that there were 23,522 registered voters in the City of Cuyahoga Falls and said Board upon the request of the Respondent, John Ramey, examined all the signatures on the petition and determined that there were 2,859 registered voters who signed the petition. Further, the Board of Elections did not examine nor make any determination regarding any other irregularities other than those who were registered voters.

"10. Respondent, John Ramey, did not invalidate any names that had been previously invalidated by the Board of Elections.

"11. Respondent, John Ramey, requested Jerry Sloan's opinion as to the sufficiency of the petitions and Jerry Sloan, Law Director, and the Law Department did consult and assist John Ramey, Clerk of Council, in gathering information, in order that the Clerk have a full understanding of the basis on which his decision on the sufficiency of said signatures was being based. Jerry Sloan advised John Ramey to reject the referendum petitions. Pursuant thereto respondent, John Ramey, determined that the petition was insufficient.

"12. Respondent, John Ramey, in examining the petitions filed with him, to determine their sufficiency concluded that 237 signatures were affixed to petitions in which the circulator failed to comply with the mandate of R. C. 3501 38(F) (Part Petition numbers 4, 23, 27, and 97).

"13. Respondent, John Ramey, also concluded that 252 signatures were invalid because they were obtained prior

to March 1, 1977, the date of the filing of a verified copy of the ordinance with the Finance Director. (Part Petition numbers 9, 10, 13, 18, 22, 33, 50, 54, 57, 63, 94, and 100.)

"14. Respondent, John Ramey, also concluded that 410 signatures were invalid because they were affixed to part petitions wherein either the circulator failed to sign the part-petition or where the part-petition was circulated by more than one circulator. One part-petition wherein the circulator failed to sign contained 8 signatures. (Part-petition 109). Three hundred, forty-nine signatures were affixed to part-petitions wherein the part-petition was circulated by more than one circulator (part-petitions 2, 3, 5, 6, 7, and 8). Fifty-three signatures were affixed to part-petition 11 which was considered a double circulator part-petition because the signature of circulator Paul Marcotte was crossed out and the signature of Grace Marcotte added and sworn to; and further, the first voter signature (which was at some indeterminable time crossed off) is not covered by the attestation of circulator Grace Marcotte.

"15. That the Law Director who was accomplanied by John Ramey and Secretary Linda Walk while in the presence of Attorney William Henricks did interview and question the following annexation circulators:

"Chuck Carst, 655 Eleanora Drive, Cuyahoga Falls, Ohio

"Grace Marcotte, 200 Cochran Road, Cuyahoga Falls, Ohio

"Robert Crawford, 3195 Rice Road, Cuyahoga Falls, Ohio

"Jane Walker, 196 Cochran Road, Cuyahoga Falls, Ohio

"Robert Walker, 196 Cochran Road, Cuyahoga Falls, Ohio

"Helen Mahaf, 3493 Haas Road, Cuyahoga Falls, Ohio

"Mary Mezzano, 52 Norton Heights Drive, Peninsula, Ohio

"16. That from said examination, the Law Director received statements which were inconsistent with the pe-

titions that were signed by the double circulator. For example: double circulators with no physical means of determining where they started and stopped in obtaining signatures from individuals nor did they have any written record other than their personal memory as to where they started and stopped in obtaining signatures. On several occasions after showing the circulator the petition which they said they witnessed, they gave inconsistent statements as to where they in fact started and stopped obtaining signatures: specifically Jane and Robert Walker.

"17. Furthermore, that the above annexation circulators were all residents of the Township of Northampton with the exception of one Peninsula resident.

"18. Non-resident circulators collected 1,516 signatures which have not been excluded otherwise. Secondly, 85 out of the 114 petitions were circulated by Cuyahoga Falls residents.

"19. Attached hereto as a joint exhibit and included as part of the Statement of Facts are the original part-petitions filed with Respondent, John Ramey.''

### Issue I

"Whether the clerk of council when determining sufficiency of a referendum petition performs a ministerial or a discretionary function."

To be entitled to a writ of mandamus a relator must show: (1) a legal duty owed by the respondent; (2) a clear right to have that duty performed; and (3) that relator has no adequate remedy at law. *State, ex rel. National City Bank,* v. *Bd. of Education* (1977), 52 Ohio St. 2d 81, 84; *State, ex rel. Gongwer,* v. *Graves* (1913), 90 Ohio St. 311, 324-25. A writ may issue to compel performance of a ministerial act, to compel the exercise of discretion, or to correct a gross abuse of discretion. *State, ex rel. Ramsey,* v. *Indus. Comm.* (1942), 140 Ohio St. 246; *State, ex rel. Great Lakes College,* v. *Medical Bd.* (1972), 29 Ohio St. 2d 198.

Section 2, Article III, of the Cuyahoga Falls charter, provides in part:

"The electors shall have the power to approve or re-

ject at the polls any ordinance or resolution passed by the Council, except as hereinafter provided. Within thirty (30) days after the passage by the Council of such ordinance or resolution or its repassage over the Mayor's veto, whichever is later, a petition signed by at least ten percent (10%) of the electors of the City may be filed with the Clerk of the Council, requesting that such ordinance or resolution be either repealed or submitted to a vote of the electors. If said petition is signed by twenty percent (20%) or more of such electors, the date of the election may be fixed therein, not less than ninety (90) days from the time of filing thereof. When such petition is filed, the Clerk shall first ascertain the sufficiency of the petition, and if found sufficient, the Council shall thereupon, within thirty (30) days of the filing of such petition, reconsider such ordinance or resolution. * * *"

The respondent clearly has a duty to transmit a referendum petition to the council if he determines that the petition is sufficient. That determination, however, necessarily involves the exercise of some discretion. See, *State, ex rel. Kahle,* v. *Rupert* (1918), 99 Ohio St. 17. Since the respondent has exercised that discretion and refused to transmit the petition, we must determine if there has been such an abuse of discretion as to allow the issuance of the writ. We find that the relator has no adequate remedy at law.

The only indication in the charter of the respondent's authority concerning the determination of the sufficiency of a referendum petition is contained in Section 2, Article I:

"All such powers shall be exercised in the manner prescribed in this Charter, or if not prescribed herein, in such manner as Council may determine, or unless a contrary intent appears in this Charter or in the enactments of the Council, in such manner as now or hereafter may be provided by the laws of the State of Ohio."

The relator alleges, and the respondent does not dispute, that R. C. 731.41 is inapplicable. See, *State, ex rel. Nimon,* v. *Springdale* (1966), 6 Ohio St. 2d 1. While a board

of elections has the power under R. C. 3501.11(K) to determine if all the requirements concerning a referendum petition have been met, *State, ex rel. Schultz, v. Bd. of Elections* (1976), 50 Ohio App. 2d 1, affirmed, 48 Ohio St. 2d, 173, the authority of a city council, and by analogy, the clerk, is more restricted. *State, ex rel., v. Lemon* (1925), 26 Ohio N. P. (N. S.) 151, held that, in determining the validity of a referendum petition, a city clerk can exercise no judicial prerogative. The court stated that the clerk cannot go beyond the fact of the petition and require the aid of witnesses in reaching his determination. *Lemon, supra,* at 160. We concur in that reasoning. The relator correctly points out that R. C. 731.31 attaches a presumption of sufficiency to the petition and accompanying signatures. However, we reject the relator's contention that the respondent should have transmitted the petition to council upon the board of election's finding that the petition contained 2,859 valid signatures. The board merely determined that these were the signatures of registered voters. The respondent can make a more thorough investigation to determine the sufficiency on the face of the petition. In *State, ex rel. Polcyn, v. Burkhart* (1973), 33 Ohio St. 2d. 7, initiative petitions to amend the city charter were filed with the city council. The petitions were then sent to the law department for study. This study revealed certain errors in the description of metes and bounds, and the council refused to certify the petition to the board of elections. The relator sought a writ of *mandamus* to compel certification to the board. The Court of Appeals granted the writ and held that the errors were not apparent on the petition's face. The Supreme Court determined that Section 9, Article XVIII, of the Ohio Constitution, does not bestow any judicial prerogative upon legislative authorities to determine the sufficiency of a petition aimed at a charter amendment. The court, at page 10, declared that:

"* * * As can be seen from the consistency of result in the foregoing cases, council's power to examine initiative petitions for sufficiency has not been declared by this court to extend beyond matters of form, or 'administrative de-

terminations' concerning the number of valid signatures.''
. ''* * *.

"None of the cases decided by this court, which are cited by appellants, should be construed to invest municipal legislative authorities with the power to determine what substantive errors, if any, are grave enough to warrant the withdrawal of a whole issue from the electorate, whether they appear 'on the face' of the petitions or not. * * *''

While the instant case does not concern the type of petition at issue in *Polcyn, supra,* we believe that the principles governing the respondent's power to determine the sufficiency of this referendum petition are the same as those laid down in *Polcyn.* This is admitted by respondent. We proceed to an analysis of the types of disqualifying factors found in the petition and of the methods employed to discover those factors.

### Issue II

"Whether the clerk of council's rejection of the referendum petition was for good cause or was arbitrary and capricious."

Under the city charter, 2,352 valid signatures are required on a referendum petition. The board of elections determined that 2,859 registered voters signed the petition. The signatures invalidated by the board of elections are not in issue.

(A) The respondent found that 237 signatures were invalid where the circulator violated R. C. 3501.38(F). That statute provides, in part:

"All declarations of candidacy, nominating petitions, or other petitions presented to or filed with the secretary of state or a board of elections or with any other public office for the purpose of becoming a candidate for any nomination or office or for the holding of an election on any issue shall, in addition to meeting the other specific requirements prescribed in the sections of the Revised Code, relating thereto, be governed by the following rules: * * *

"(F) If a circulator knowingly permits an unqualified person to sign a petition paper or permits a person to

write a name other than his own on a petition paper, that petition paper is invalid; otherwise the signature of a person not qualified to sign shall be rejected but shall not invalidate the other valid signatures on the paper.''

We have examined the part petitions in question. Apparently, the respondent invalidated every registered voter's signature on them. We agree with the relator's contention that the respondent made a quasi-judicial determination, which he cannot do. See, *State, ex rel. Polcyn, supra; State, ex rel, Schutz, supra.* In *State, ex rel. Waltz,* v. *Michell* (1931), 124 Ohio St. 161, signatures were repudiated, some had nonexistent addresses, and some signatures were in the same handwriting. A comparable situation is not present here. We do not consider whether, the fact, these signatures should be invalidated pursuant to R. C. 3501.38(F) in a proper judicial proceeding. We do find, however, that the respondent grossly abused his discretion in making that determination.

(B) The respondent invalidated 252 signatures for noncompliance with R. C. 731.32. That statute provides:

''Whoever seeks to propose an ordinance or measure in a municipal corporation by initiative petition or files a referendum petition against any ordinance or measure shall, before circulating such petition, file a verified copy of the proposed ordinance or measure with the city auditor or the village clerk.''

The verified copy of the ordinance was filed on March 1, 1977, with the city finance director, the proper official to receive the filing. See, *Edward Rose of Ohio* v. *McLaughlin* (1970), 22 Ohio App. 2d 190. The relator contends there was substantial compliance with R. C. 731.22, which suffices to negate the respondent's action. The cases cited by the relator, *e. g. State, ex rel. Saffold,* v. *Bd. of Elections* (1970), 22 Ohio St. 2d 63; *Stern* v. *Bd. of Elections* (1968), 14 Ohio St. 2d 175; *State, ex rel. Blackwell,* v. *Bachrach* (1957), 166 Ohio St. 301, are not persuasive. Compliance with R. C. 731.32 is mandatory. *State, ex rel. Mika,* v. *Lemon* (1959), 170 Ohio St. 1; *State, ex rel. Nimon,* v. *Springdale, supra; Edward Rose of Ohio* v. *McLaughlin, supra.* This type of de-

fect is within the respondent's authority to determine. See *State, ex rel. Poor,* v. *Addison* (1937), 132 Ohio St. 477. The respondent correctly invalidated those 252 signatures.

(C) The respondent further asserts that noncompliance with R. C. 731.32 justifies the invalidation of the entire petition, not merely the 252 signatures contained in several part petitions. We find that, under these circumstances, acceptance of this argument would work too harsh a result. We find, however, that the entire part petition must be invalidated, where the part petition contains signatures obtained prior to March 1, 1977. An examination of the part petitions cited in statement of fact No. 13 reveals an additional 175 signatures which must be invalidated for a total of 427.

(D) The respondent invalidated 410 signatures for being affixed to part petitions where the circulator failed to sign the part petition or where the part petition was circulated by more than one circulator. We note first, that part petition 109 is clearly invalid, as it does not contain the signature of any circulator. This invalidates 8 signatures. The respondent invalidated part petition 11 (50 signatures) because the signature of one circulator attests to only signatures 2 through 54. We find that the respondent grossly abused his discretion by invalidating this part petition. *State, ex rel. Waltz,* v. *Mitchell, supra,* does not aid the respondent.

The respondent invalidated 289 of those 410 signatures where the part petition appears to contain affidavits of two circulators, each circulator purportedly attesting to two different groups of signatures. The respondent also struck out part petition 5, where, as in part petition 11, the name of one circulator is crossed out and another substituted. The respondent contends that statement of fact 16 demonstrates the dangers in a "double circulator" situation. Assuming this is true, statements of fact 15 and 16 also demonstrate that the respondent grossly abused his discretion in relying upon this sort of fact finding procedure to invalidate the signatures in question. The respondent does not have this authority. *State, ex rel. Polcyn,* v. *Burkhart,*

*supra.* The authority to conduct quasi-judicial proceedings lies elsewhere. *State, ex rel. Schuitz,* v. *Bd. of Elections, supra.*

However, in examining several of those part petitions (2, 3, 5, 7, and 11), we believe the respondent correctly invalidated some of those signatures, but used an incorrect reason. We find that R. C. 3519.06 provides:

"No initiative or referendum part-petition is properly verified if it appears on the face thereof, or is made to appear by satisfactory evidence:

"(A) That the statement required by section 3519.05 of the Revised Code is not properly filled out;

"(B) That the statement is not properly signed;

"(C) That the statement is altered by erasure, interlineation, or otherwise;

"(D) That the statement is false in any respect;

"(E) That any one person has affixed more than one signature thereto."

While this section is in the Revised Code chapter pertaining to state wide referendum, it has been applied to municipal referendums. *Zeiher* v. *Egger* (1953), 100 Ohio App. 323, 326. We believe this section is applicable here because it is part of the general law. The examination of part petition numbers 2, 3, 5, 7, and 11 reveals that the statement on the face of each has been "altered by erasure, interlineation, or otherwise," contrary to R. C. 3519.06. There is an absence of any evidence in the stipulations of fact to explain the "erasure, alteration or otherwise" as to its materiality or the reasons for them or how and where they occurred. The relators have the burden of showing the statements are proper. The 276 signatures on those petitions were properly invalidated.

We will not rule upon part petitions 6 and 8. We decline to rule on whether one part petition may properly have more than one circulator or if it can only be ruled improper for other reasons after proper judicial inquiry into the methods of circulation. That decision is unnecessary to a determination of this appeal. The board of elections has the power and the duty to investigate these matters. See,

186

*State, ex rel. Kennedy,* v. *Bd. of Elections* (1976), 46 Ohio St. 2d 37; *Markus* v. *Bd. of Elections* (1970), 22 Ohio St. 2d 197; *State, ex rel. Janasik,* v. *Sarosy* (1970), 12 Ohio St. 2d 5; *State, ex rel. Shultz,* v. *Bd. of Elections, supra.*

(E) The respondent finally argues that 1,516 signatures should be invalidated since these signatures are affixed to part petitions circulated by persons not residing in the city. The respondent cites a host of constitutional and statutory provisions to buttress this argument. This authority does not explicitly require the circulator to be a registered voter of the jurisdiction wherein the petition is effective. We decline to find this requirement by implication. It is the people of Cuyahoga Falls, who sign or refuse to sign a referendum petition, upon whom the exercise or non-exercise of the referendum power ultimately depends.

*Summary*

The petition starts out with 2,859 signatures. We have determined the respondent could properly invalidate a total of 711 of these signatures (part petitions 2, 3, 5, 7, 9, 10, 11, 13, 18, 22, 33, 50, 54, 57, 63, 94, 100, 109). This leaves a total of 2,148 signatures, which is an insufficient number. Accordingly, the writ is denied.

*Writ denied.*

BELL and VICTOR, JJ., concur.