MORRIS *v.* CITY COUNCIL OF THE CITY OF MACEDONIA ET AL.

[Cite as *Morris v. Macedonia City Council* (1994), 71 Ohio St.3d 52.]

(No. 94–1996—Submitted and decided October 13, 1994.)

*Gallup, Burns & Mills* and *David B. Gallup,* for relator.

*Joseph W. Diemert, Jr.,* Director of Law, *pro se,* and for respondents Macedonia City Council, council members, and Macedonia Mayor Joseph Migliorini.

*Lynn C. Slaby,* Summit County Prosecuting Attorney, and *William E. Schultz,* Assistant Prosecuting Attorney, for respondent Summit County Board of Elections.

---

*Per Curiam.*   In order to be entitled to a writ of mandamus, relator must establish that (1) he has a clear legal right to have the charter amendment initiative placed on the November 8, 1994 ballot, (2) respondents have a corresponding legal duty to submit the charter amendment initiative to the electors of Macedonia on the November 8, 1994 ballot, and (3) relator possesses no adequate remedy in the ordinary course of the law.   *State ex rel. Seikbert v. Wilkinson* (1994), 69 Ohio St.3d 489, 490, 633 N.E.2d 1128, 1129.

Relator asserts in his sole proposition of law that respondents Macedonia City Council and its members had a mandatory duty to enact the enabling ordinance by September 9, 1994 in order to place the charter amendment initiative on the November 8, 1994 ballot.

Section 7, Article XVIII of the Ohio Constitution authorizes municipal corporations to adopt and amend a home rule charter, and Sections 8 and 9 of Article XVIII prescribe the procedures for adopting and amending a charter.   *State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections* (1993), 67 Ohio St.3d 334, 336, 617 N.E.2d 1120, 1122.   Section 9 of Article XVIII, which incorporates the requirements of Section 8, allows, and on petition by ten percent of the electors, requires, the legislative authority of any city, *e.g.,* city council, to "forthwith" authorize by ordinance an election on the charter amendment issue.   Section 14, Article XVIII of the Ohio Constitution provides that "[t]he percentage of electors required to sign any petition provided for herein shall be based upon the total vote cast at the last preceding general municipal election."

Relator complied with the foregoing constitutional provisions by submitting a petition containing 338 signatures on August 8, 1994. Arceci sent the petition to the board, which *twice* certified that it contained more than the required number of signatures. On the second occasion, the board verified 321 proper signatures, substantially exceeding the 217 signatures needed to have the issue placed on the November 8 ballot.

Respondents city council et al. contend that based upon council's legitimate concerns about defects in the petitions, time constraints, and the inability of three council members to attend the scheduled September 8, 1994 meeting, council had no mandatory duty to certify the charter amendment initiative for placement on the November 8 ballot.

Since the Constitution requires that the admission of the charter amendment initiative be made by the legislature, it follows that the legislature need not make the submission unless satisfied of the sufficiency of the petitions and that all statutory requirements are fairly met. *Semik, supra,* 67 Ohio St.3d at 335–336, 617 N.E.2d at 1122; *State ex rel. Hinchliffe v. Gibbons* (1927), 116 Ohio St. 390, 395, 156 N.E. 455, 456–457. Procedures may be added to the constitutional amendment process if the additions do not conflict with the Ohio Constitution. *State ex rel. Bedford v. Cuyahoga Cty. Bd. of Elections* (1991), 62 Ohio St.3d 17, 22, 577 N.E.2d 645, 648–649. Section 18.01, Article XVIII of the Macedonia Charter provides that the charter "may be amended as provided by the Ohio Constitution or the Statutes of the State of Ohio." Thus, non-conflicting portions of R.C. 731.31, which provides that "[p]etitions shall be governed * * * by the rules set forth in [R.C.] 3501.38," apply. The law director's objections to the petitions were premised in part on the petition requirements of R.C. 3501.38.

The city council's constitutional authority to review the sufficiency of petitions is limited to matters of form, not substance. *State ex rel. Polcyn v. Burkhart* (1973), 33 Ohio St.2d 7, 10–11, 62 O.O.2d 202, 203–204, 292 N.E.2d 883, 885. A city council's authority to determine if all applicable statutory requirements have been met is therefore more restricted than that of a board of elections. See *State ex rel. Watkins v. Quirk* (1978), 59 Ohio App.2d 175, 13 O.O.3d 202, 392 N.E.2d 1302. A city council may not engage in judicial or quasi-judicial determinations, *e.g.,* analyzing if the requirements of R.C. 3501.38(F) have been satisfied. See *id.;* see, also, *Polcyn, supra; State ex rel. Citizens for a Better Portsmouth v. Sydnor* (1991), 61 Ohio St.3d 49, 52, 572 N.E.2d 649, 651. In other words, council cannot inquire into questions not apparent on the face of the petitions themselves or which require the aid of witnesses to determine. Cf. *State ex rel. v. Lemon* (C.P.1925), 26 Ohio N.P. (N.S.) 151, 160 (scope of authority of the city clerk limited to ministerial determination in reviewing sufficiency of municipal referendum petition).

One of the main reasons given by city council in this case for its delay in determining the sufficiency of the petition is the law director's determination that four of the nine part-petitions contained irregularities, and that "[i]f all of the part-petitions containing the irregularities were determined by Council to have been invalid, the petitions would not have contained the 217 valid signatures necessary to place the Charter amendments on the ballot."

Diemert's objection to Herchick's part-petition involved alleged non-compliance with R.C. 3501.38(E), requiring that the circulator sign a statement on each petition paper that he witnessed the affixing of every signature. See *State ex rel. Home Fed. S. & L. Assn. v. Moser* (1974), 40 Ohio St.2d 94, 69 O.O.2d 442, 320 N.E.2d 672. On the face of Herchick's part-petition, he complied with R.C. 3501.38(E). However, Diemert suggested a possible defect when he received extrinsic information from a signator that, contrary to Herchick's statement in his circulator's affidavit, Herchick had not witnessed her signature. Since the foregoing objection went beyond the form of the part-petition and required the aid of witnesses to determine, it presented a judicial determination which council was not authorized to make. *Polcyn* and *Sydnor, supra.* Accordingly, Herchick's part-petition was not defective as to matters of form.

Even assuming, *arguendo,* that the alleged defects in the three remaining part-petitions raised by Diemert and relied upon by council to delay a prompt sufficiency determination possessed merit and further assuming that all the signatures on the three allegedly defective part-petitions were stricken, there were still at least 224 valid signatures, more than the 217 required for passage of the enabling ordinance.

As the court recently held in *State ex rel. Concerned Citizens for More Professional Govt. v. Zanesville City Council* (1994), 70 Ohio St.3d 455, 458, 639 N.E.2d 421, 423–424, council's limited authority to review sufficiency of the petition must be balanced against its mandatory constitutional duty to submit the charter amendment initiative "forthwith." Here, as in *Concerned Citizens,* council had considerably more than a reasonable time to independently review the form of the petition before the constitutional sixty-day period for placement on the November 8 ballot elapsed on September 9, 1994. The part-petitions were filed on August 8, 1994. There were only nine part-petitions containing 338 signatures. The Macedonia City Council possessed more time from the date of filing than did the city councils in *State ex rel. Jurcisin v. Cotner* (1984), 10 Ohio St.3d 171, 10 OBR 503, 462 N.E.2d 381, and *Sydnor,* and only slightly less time than the city council in *Concerned Citizens.*

Council let three scheduled regular meetings, one special meeting, and over a month pass without considering and determining the issue. Although council claims that it acted in good faith because it was not responsible for delays caused

by the board of elections and the law director, it could have acted more expeditiously by delivering copies of the part-petitions on the date they were filed to both the board of elections and the law director and could have further impressed upon both that time was of the essence, given the constitutional time restriction and the proximity of the September 9, 1994 cutoff date. Council could not abdicate its ultimate responsibility through its referrals.

In *Jurcisin,* the clerk of council also referred the petition to the board of elections for examination and was advised by the board that it contained the requisite number of valid signatures only one day prior to the last day to pass an ordinance enabling placement of a proposed charter amendment on the ballot for the next scheduled election. The court allowed a writ to place the initiative on the ballot even though no council meeting had been scheduled for the final date in which council could have acted. Here, council received the final verification from the board of elections on August 31, 1994 and was advised of Diemert's suggestions on September 1, 1994. At that point, it should have acted immediately, rather than waiting for a meeting on September 8, which was subsequently cancelled due to the purported illness and absence of three council members.

By council's failure to examine the signatures and render a prompt determination on their sufficiency when council possessed ample time to do so, the signatures must be presumed valid. *Concerned Citizens, supra,* 70 Ohio St.3d at 458, 639 N.E.2d at 423–424, citing *State ex rel. Blackwell v. Bachrach* (1957), 166 Ohio St. 301, 2 O.O.2d 219, 143 N.E.2d 127, paragraph six of the syllabus; see, also, R.C. 731.31. Council delayed its determination of the sufficiency of the petition based in part on a substantive objection outside the scope of its authority, and on alleged ministerial defects which would not have invalidated enough signatures to warrant the withdrawal of the issue from the electorate. See *Blackwell, supra.*

While respondents city council et al. emphasize that council did not act at its September 8, 1994 meeting due to illness and absence of three council members, which respondents seem to claim also precluded a special meeting from being scheduled for September 9, 1994, council should have acted more promptly in accordance with its mandated duty. To hold otherwise would allow council members opposed to a charter amendment initiative to circumvent their constitutional duty to submit the issue "forthwith" by unnecessarily delaying a meeting to timely determine the issue and then absenting themselves from that meeting. Under these circumstances, the writ is allowed.

Respondents city council et al. further contend that this action is moot because council subsequently enacted an enabling ordinance to place the charter amendment initiative on the ballot at a January 10, 1995 special election. Relator disputes whether this has actually occurred. Regardless, since council had the

opportunity to enact an ordinance to place the issue on the November 8 ballot and declined to render a prompt determination, in part based upon alleged irregularities outside the scope of its authority, placement on the November 8 ballot is warranted. *Concerned Citizens, Sydnor,* and *Jurcisin, supra.* However-er, we deny relator's request for a self-executing order.

Relator also requests for this case either dispensing with, or shortening, the notice period set forth in Sections 8 and 9, Article XVIII, Ohio Constitution. These sections provide that copies of proposed amendments may be mailed to the electors by the clerk of the municipality not less than thirty days prior to the election or notice of the proposed amendments may be given by newspaper advertising "pursuant to laws passed by the General Assembly." If the latter option is selected, the full text must be published once a week for not less than two consecutive weeks in a newspaper published in the municipal corporation, or if none, in a newspaper of general circulation within the municipal corporation, with the first publication being at least fifteen days prior to the election. R.C. 731.211. We grant relator's request, and since the November 8 election is now less than thirty days away, the optional period to mail copies of the proposed charter amendment to the electors is shortened in this case to not less than ten days prior to the election.

As to relator's request for attorney fees, he has provided security for costs, as required by R.C. 733.59. Cf. *Sydnor, supra.* Respondents city council et al. claim that there is no statutory authorization for attorney fees in this type of action. However, R.C. 733.61 provides that the allowance of attorney fees in a taxpayer action is entirely within the sound discretion of the court. *Harrison v. Judge* (1992), 63 Ohio St.3d 766, 591 N.E.2d 704; *Billington v. Cotner* (1974), 37 Ohio St.2d 17, 18, 66 O.O.2d 9, 10, 305 N.E.2d 805, 807. The allowance of attorney fees in a taxpayer action requires a resultant public benefit. *Id.* A decision on an award of attorney fees to relator is thus withheld until the receipt of briefs on the issue and evidence concerning the fees requested and the reasonableness of the requested amount.

Accordingly, we allow the writ, compelling respondents to place the proposed charter amendment on the November 8, 1994 ballot, deny relator's request for a self-executing order, and shorten the optional period for mailing copies of the proposed charter amendment to electors of Macedonia. This renders relator's October 6, 1994 emergency motion to strike respondents' evidence moot.

*Writ allowed.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.