OPINIONS OF THE SUPREME COURT OF OHIO

**** SUBJECT TO FURTHER EDITING ****

The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
    Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
    NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State ex rel. Spadafora et al. v. Toledo City Council.
[Cite as State ex rel. Spadafora v. Toledo City Council
(1994),    Ohio St.3d   .]
Mandamus to compel placement of proposed charter amendment
    for city of Toledo on ballot -- Writ denied, when.
    (No. 94-2210 -- Submitted October 25, 1994 -- Decided
December 30, 1994.)
    In Mandamus.
    In May 1993, a group named the Toledo Downtown Rooters
("TDR") was created to oppose plans to locate a branch of the
Center of Science and Industry ("COSI") in a vacant facility in
downtown Toledo known as the Portside Festival Marketplace
("Portside").  TDR initiated a petition drive to place a
proposed charter amendment on the ballot for the city of
Toledo.  The proposed amendment would require the Portside
property to be used solely and exclusively as a "Festival
Marketplace" or as a "first-class commercial or retail use," as
defined in then-existing deeds.  The practical effect of the
amendment would be to prohibit the location of the COSI branch
in Portside.  The part-petitions contained a notarized "OATH OF
CIRCULATOR" which stated that the "circulator has received no
money or benefit or promise for obtaining these signatures."
    The head of TDR, Betty Mauk, agreed to provide expense
money to William Baker in the amount of $2 per completed
part-petition that he circulated.  Baker had Antonio Stewart
circulate some petitions for which Baker promised to pay him
the $2 Baker would receive for each completed part-petition.
On May 18, 1994, Baker signed a note agreeing to repay Mauk the
expense money, i.e., $400, he had received for the completed
part-petitions he had circulated.  On June 17, 1994, a
quitclaim deed from the Maumee Valley Community Urban
Development Corporation released all conditions and
restrictions on the use of the Portside property, including the
restrictions quoted in the text of the part-petitions being

circulated.

On June 20 and July 15, 1994, a petition and supplement thereto proposing the charter amendment which contained a total of 19,694 signatures were filed with the clerk of respondent, Toledo City Council. The petition was forwarded to the Lucas County Board of Elections ("board"), which determined that it contained 10,481 valid signatures. On July 25, 1994, the clerk of council certified to council that the petition contained 10,481 valid signatures. A total of 9,520 signatures was needed for submission of the proposed charter amendment to the electorate.

The Director of Law (and the Acting Director of Law) for the city of Toledo sent letters to the board protesting the petition. On July 26 and August 9, 1994, council held regular meetings but took no action on the petition. At its regular meeting of August 23, 1994, council enacted an emergency ordinance referring the petition to the board for review of the law director's objections. By letter dated August 24, 1994 to the board, the law director reiterated and supplemented his objections to the petition.

The board, after conducting evidentiary hearings, decided on September 2, 1994 that it lacked authority to determine the validity and sufficiency of the charter amendment petitions. Nevertheless, the board issued a report to council, detailing its findings regarding each of the law director's objections. The board determined that Baker had been compensated for circulating part-petitions and that those petitions contained 1,450 valid signatures. The board did not determine if the part-petitions were invalid because of Baker's compensation but did decide that it would not refer him for criminal prosecution since Baker had requested TDR not to file these part-petitions. The board determined that all of the law director's other objections to the petition were meritless.

On September 6, 1994, council passed an ordinance in which it determined that the proposed charter amendment would not be submitted to the electors because the petition was "insufficient and/or invalid in some or all of the following alternative respects:

"(a) The Law Department opinion, as supported by the findings and report of the Board of Elections, is that the oath of certain circulators (Baker and Stewart) on the original petitions was false, in that they received compensation for their services as circulator[s], which was contrary to their oath and prohibited by Ohio Revised Code Section 3519.06(D), thus invalidating approximately 1,600 signatures (Baker-1450, Stewart-150) of 10,481 filed on June 20, 1994.

"(b) The Law Department opinion, which is not shared by the Board of Elections, is that the content, purport and effect of the petition, which refers to deed restrictions on the Portside property, were false and invalid after the June 16, 1994 closing with the State of Ohio for COSI, and the acceptance of deeds releasing said restrictions, the execution of contracts and recording of documents; and the acts of knowingly circulating such false petitions after June 16, 1994 constituted continuing misrepresentations prohibited by Ohio Revised Code Sections 3599.14, 3599.36 and 731.36(A), thus

invalidating approximately 1,319 signatures obtained after said date and filed on June 20, 1994 and July 15, 1994."

Toledo City Council thus concluded that 2,919 of the 10,481 previously certified signatures were invalid, leaving a remainder of 7,562 valid signatures, less than the 9,520 required to submit the proposed charter amendment to the electorate.

On October 17, 1994, almost six weeks following council's determination, relators, Anthony A. Spadafora and Portside and Renaissance Toledo Advocates ("PARTA"), initiated this action seeking a peremptory writ of mandamus to compel council to adopt an ordinance placing the proposed charter amendment on the November 8, 1994 ballot. Relators alternatively requested a peremptory writ compelling council to place the charter amendment on the ballot at the first available time following the November 8, 1994 ballot. Spadafora is an elector and taxpayer of the city of Toledo and a signator of the charter amendment petition. PARTA is a political action committee operated by Spadafora and others as an arm of the charter amendment proponents. On October 24, 1994, council filed an answer, affidavit, and exhibits.

Jeffrey M. Gamso, for relators.
Mark S. Schmollinger, Toledo Acting Director of Law, and Joseph Goldberg, Senior Attorney, for respondent.

Douglas, J.    In the case at bar, certain circulators (including William Baker) signed an oath on petitions that they received no compensation for their services as petition circulators. William Baker himself, the Lucas County Board of Elections and the Toledo City Council all now agree that Baker was paid to circulate the petitions and the oath of the circulators was false. In fact, it was decided by the board of elections not to refer Baker for criminal prosecution only because Baker requested the TDR not to file the part-petitions in question. The petitions were, however, filed.

R.C. 3519.06(D) provides that "[n]o initiative or referendum part-petition is properly verified if it appears on the face thereof, or is made to appear by satisfactory evidence:  * * *  That the statement is false in any respect[.]"  (Emphasis added.)  Admittedly, R.C. Chapter 3519 involves statewide initiative and referendum petitions. However, in State ex rel. Watkins v. Quirk (1978), 59 Ohio App.2d 175, 13 O.O.3d 202, 392 N.E.2d 1302, the court held that a municipal clerk of council does have authority to invalidate all signatures affixed to referendum part-petitions where the part-petition on its face violates R.C. 3519.06(C). We agree that R.C. 3519.06 may be applied to a municipal referendum petition. Here, the board of elections rendered a report to the council which, in part, found (after a hearing) that Baker had in fact been compensated for circulating part-petitions. Certainly this is "satisfactory evidence" that on the face of the petition, there was a false statement. See R.C. 3519.06(C). Thus, city council not only had the right to reject the ordinance placing the proposed charter amendment on the ballot -- it had the duty so to do.

Further, in State ex rel. Concerned Citizens for More Professional Govt. v. Zanesville City Council (1994), 70 Ohio St.3d 455, 457-458, 639 N.E.2d 421, 423, we said that "* * * it follows that the legislature [city council] need not make the submission [to the electors] unless satisfied of the sufficiency of the petitions and that all statutory requirements are fairly met." (Emphasis added.) See, also, State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections (1993) 67 Ohio St.3d 334, 335-336, 617 N.E.2d 1120, 1122.

Clearly, one of the requirements of R.C. 3519.06(D) is that an initiative and/or referendum petition speak, on its face, the truth. That statute was clearly violated here and, accordingly, Toledo City Council had the right (and duty) not to submit the question, based on these petitions, to the electors of Toledo.

In consideration of the foregoing, the writ is denied and the cause is dismissed.

Writ denied and<br/>cause dismissed.

Resnick, F.E. Sweeney and Pfeifer, JJ., concur.

Moyer, C.J., A.W. Sweeney and Wright, JJ., concur separately.

Moyer, C.J., concurring in judgment only. I concur in judgment with the majority decision for the following reasons. In a very brief opinion, the majority casts aside well-established law relating to the authority of a city council of a charter city to place or not place on the ballot a charter amendment proposed by a requisite number of electors of the municipality. Whatever our views may be with respect to the desirability of locating a branch of the Center of Science and Industry in Portside, we should not cast aside well-established law and announce new law that will have a dramatic impact upon the will of the voters to place issues on the election ballots.

Section 7, Article XVIII of the Ohio Constitution authorizes municipal corporations to adopt and amend a home-rule charter. Sections 8 and 9 of Article XVIII prescribe the procedures for adopting and amending a charter. State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections (1993), 67 Ohio St.3d 334, 336, 617 N.E.2d 1120, 1122. On petition of ten percent of the electors, the legislative authority of the city must "forthwith" authorize by ordinance an election on the proposed charter amendment. In a unanimous opinion we recently followed well-established law and held that the authority of a city council in determining the sufficiency of a petition is limited to the form of the petition and does not include substantive matters. Morris v. Macedonia City Council (1994), 71 Ohio St.3d 52, 641 N.E.2d 1075; see State ex rel. Polcyn v. Burkhart (1973), 33 Ohio St.2d 7, 62 O.O.2d 202, 292 N.E.2d 883. In fact, there is no way to find the law in Morris inapplicable to this case.

The city council's authority to determine if all applicable statutory requirements have been met is not as broad as that of a board of elections or the Secretary of State. Council may not engage in judicial or quasi-judicial determinations of matters which are not apparent on the face of

the petition or which require the aid of witnesses to determine. See Morris, supra, at 55, 641 N.E.2d at 1078; State ex rel. Citizens for a Better Portsmouth v. Sydnor (19791), 61 Ohio St.3d 49, 52, 572 N.E.2d 649, 651; and Polcyn, supra, 33 Ohio St.2d at 10-11, 62 O.O.2d at 203-204, 292 N.E.2d at 885. Without any analysis, the majority opinion cites a court of appeals' opinion, State ex rel. Watkins v. Quirk (1978), 59 Ohio App.2d 175, 13 O.O.3d 202, 392 N.E.2d 1302, to support its holding that R.C. 3519.06(C), which clearly applies to statewide initiative and referendum petitions, now applies to petitions filed to amend the charter of a municipality. That holding has far-reaching implications and should not be adopted in this case.

It is clear from the plain words of the Constitution, the cases applying the Constitution, and the statutes that the policy of the law is to favor the right of citizens to amend the charters of the municipalities in which they live. For that reason, the law does not, among other things, give a city council the right to act as a quasi-judicial body and substantively attack citizens' rights to place charter amendments on the ballot. The dilemma is that the law appears to provide no remedy to persons who seek to disqualify part-petitions on the basis that the circulators thereof made false representations. It would appear, however, that an action to enjoin a board of elections from placing an issue on the ballot would be available to an appropriate party.

Notwithstanding the foregoing analysis, I concur in the judgment of the majority. Council could have enacted an ordinance placing the proposed charter amendment on the November ballot, but refused to do so based upon alleged defects which it was not authorized to consider. Had relators filed their mandamus action timely, placement of the issue on the November 8 ballot would have been warranted. However, council argues that relators did not file this mandamus action until forty-one days following its decision regarding the sufficiency of the petition. In other cases, we have compelled placement of a charter issue on the ballot for the next regularly scheduled election where relators initiated mandamus actions within ten days of either council's refusal or the constitutional deadline to enact an enabling ordinance. See, e.g., State ex rel. Jurcisin v. Cotner (1984), 10 Ohio St.3d 171, 10 OBR 503, 462 N.E.2d 381; State ex rel. Concerned Citizens for More Professional Govt. v. Zanesville City Council (1994), 70 Ohio St.3d 455, 639 N.E.2d 421; Sydnor; and Morris, supra.

Diligence and promptness are required of those seeking to affect the outcome of an election. See State ex rel. White v. Franklin Cty. Bd. of Elections (1992), 65 Ohio St.3d 45, 49, 600 N.E.2d 656, 659. The failure of relators to act promptly in this case made it virtually impossible to give electors sufficient notice of the proposed charter amendment in time for the November 8 election. See Sections 8 and 9, Article XVIII, Ohio Constitution, and R.C. 731.211. In fact, relators themselves complained that "if the proposed amendment gets on the November 8, 1994, ballot, its advocates will have precious little time to campaign for its passage." For that reason, we

refused relators' request for a writ of mandamus.

Relators alternatively request that we issue an order that would place the issue on a subsequent special election ballot within sixty and one hundred twenty days after the passage of an enabling ordinance by council. Such special election would be held at considerable cost, a cost that need not be borne had relators acted in sufficient time to place the issue on the November 8 ballot. Considering relators' considerable delay in bringing this action, I would not issue an order requiring a special election.

For the foregoing reasons, I concur only in the judgment of the majority opinion.

A.W. Sweeney and Wright, JJ., concur in the foregoing concurring opinion.