Kennedy, J.
*496 {¶ 1} In this expedited election case, relators, Rebecca C.S. Maxcy, David Ball, Sandy Bashaw, and Sean M. Nestor, seek a writ of mandamus to compel respondents, the Lucas County Board of Elections and its members, Bruce Saferin, Brenda Hill, Joshua Hughes, and David *1167 Karmol, to place a proposed charter amendment on the November 6, 2018 general-election ballot. Because the submission of the proposed charter amendment to the board of elections did not follow the specific procedure outlined in Article XVIII, Sections 8 and 9 of the Ohio Constitution -which require the legislative body of the municipality to pass an ordinance instructing the board of elections to place the proposed amendment on the ballot upon submission of a sufficient petition-we deny the writ.
BACKGROUND
{¶ 2} On August 7, 2018, relators submitted part-petitions in support of a proposed amendment to the Toledo City Charter. Titled "Keep the Jail in Downtown Toledo," the proposed amendment would
(1) require that any new or renovated jail, correctional facility, prison, justice complex, correctional treatment facility, detention center, work release, "or other building that houses criminals or accused criminals, within the City of Toledo limits," be located in the Downtown Overlay District, as defined in the Toledo Municipal Code;
*497 (2) declare it unlawful for any corporation or government to violate the rights secured by the amendment;
(3) declare that any corporation or government that violates any provision of the amendment "shall be sentenced to pay the maximum fine allowable under State law for that violation"; and
(4) authorize the city of Toledo, or any resident of the city, to enforce the prohibitions of the amendment through an action in the Lucas County Court of Common Pleas, and to recover all costs of litigation, including attorney fees.
{¶ 3} The petition's first page contained the following language:
To the Council, the legislative authority of the City of Toledo, Ohio:
We, the undersigned, qualified electors of the City of Toledo, Ohio respectfully petition the legislative authority to forthwith provide by Ordinance, for the submission to the electors of the City of Toledo, the following proposed amendment to the Charter of the City of Toledo * * *.
(Boldface sic.)
{¶ 4} On August 13, 2018, the Lucas County Board of Elections verified to the clerk of the Toledo City Council that relators had submitted a sufficient number of petition signatures to qualify the measure for the ballot. Relators allege that "[o]n or about August 14, 2018, the Clerk of Toledo City Council, pursuant to his responsibility under § 5 of the Toledo Municipal Charter, instructed the [board] to put the Proposed Amendment on the November 6, 2018 ballot for a public vote." Section 5 of the city charter reads:
Any amendment to this Charter may be submitted to the electors of the City for adoption by resolution of the Council, two-thirds of the members thereof concurring, and shall be submitted when a petition is filed with the Clerk of the Council setting forth the proposed amendment and signed by not less than ten percent of the electors.
{¶ 5} On August 28, 2018, the board voted four to zero to refuse to place the proposed charter amendment on the ballot on the ground that it contained provisions beyond the authority of the city to enact by initiative.
*1168 {¶ 6} On August 31, relators filed this action seeking a writ of mandamus to compel the board to place the proposed charter amendment on the November 6, 2018 ballot. Relators allege that
*498 the [board] engaged in unconstitutional pre-election review of the substance of the Proposed Charter Amendment and voted unanimously to reject the Proposed Amendment from the ballot ostensibly because the Proposed Charter Amendment contains provisions beyond the power of the City of Toledo to enact and that the Ohio Supreme Court "requires" the Proposed Amendment to be stricken.
{¶ 7} Respondents admitted in their answer that the board "examine[d] the proposed initiative-the Downtown Jail Initiative-in accordance with its obligations under Title 35 of the Ohio Revised Code and as set forth by this Court in State ex rel. Flak v. Betras , 152 Ohio St.3d 244, 95 N.E.3d 329 (2017)."
{¶ 8} The parties have filed briefs and evidence in accordance with the schedule for expedited election cases in S.Ct.Prac.R. 12.08.
LAW AND ANALYSIS
The amendment of a city charter is controlled by Article XVIII, Sections 8 and 9 of the Ohio Constitution, not Article II, Section 1f
{¶ 9} The right to amend a municipal charter differs from the right of initiative to enact a municipal ordinance, and the two rights are addressed in separate articles of the Ohio Constitution. The procedure to amend a municipal charter-a matter concerning the structure of a municipal government-is set forth in Article XVIII, Sections 8 and 9 of the Ohio Constitution. In contrast, Article II deals generally with the legislative power, and Section 1f of Article II reserves the right of initiative to the people of each municipality and states that "such powers shall be exercised in the manner now or hereafter provided by law."
{¶ 10} Article XVIII, Section 9 is a specific provision; Article II, Section 1f is general. "Special constitutional provisions relating to a subject will control general provisions in which, but for such special provisions, the subject might be regarded as embraced." Akron v. Roth , 88 Ohio St. 456, 461, 103 N.E. 465 (1913). Article XVIII, Sections 7, 8, and 9 provide specific procedures for amending a charter, while Article II, Section 1f does not. If the framers of the Ohio Constitution had intended Article II, Section 1f to control the amendment of a municipal charter, there would have been no need to provide a separate constitutional provision specifically addressing the procedure for amending a municipal charter. To hold that Article II, Section 1f controls would be to render Article XVIII, Section 9 superfluous.
{¶ 11} Moreover, because Article II, Section 1f states that the power of initiative "shall be exercised in the manner now or hereafter provided by law," municipalities could alter the requirements set forth in Article XVIII, Section 9 *499 for the amendment of a charter. For instance, Section 75, Toledo City Charter, states that petitions for ordinances proposed by initiative must contain signatures "equal in number to twelve percent (12%) of the total number of votes cast for all candidates for Mayor at the most recent general municipal election at which the Mayor was elected." But this court has held on multiple occasions that Article XVIII, Section 9, read in pari materia with Article XVIII, Section 14, provides that "the number of valid part-petition signatures necessary to establish a right to the placement of a proposed amendment of a municipal charter *1169 before the voters * * * is ten percent of the electors of the municipality based upon the total number of votes cast at the last preceding general municipal election." State ex rel. Huebner v. W. Jefferson Village Council , 75 Ohio St.3d 381, 384, 662 N.E.2d 339 (1995) ; see State ex rel. Wilen v. Kent , 144 Ohio St.3d 121, 2015-Ohio-3763, 41 N.E.3d 390, ¶ 5 ; State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake , 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 24. "We should be hesitant to adopt an analysis that would allow a party to evade the procedure expressly provided by the Constitution for amending a municipal charter simply by characterizing the petition as seeking an initiative rather than a petition for a charter amendment." State ex rel. Twitchell v. Saferin , 155 Ohio St.3d 52, 2018-Ohio-3829, 119 N.E.3d 365, ¶ 32 (Kennedy, J., concurring in judgment only).
{¶ 12} Despite the fact that relators seek to amend the Toledo City Charter, implicating Article XVIII, Sections 8 and 9, they present arguments as if they were exercising their right of initiative under Article II, Section 1f. Related to that assertion is relators' argument that 2016 Sub.H.B. No. 463 ("H.B. 463"), which amended R.C. 3501.11 to require a board of elections to examine an initiative petition "to determine whether the petition falls within the scope of authority to enact via initiative," violates the separation-of-powers doctrine. Those arguments are no doubt tied to this court's recent jurisprudence regarding the amendment of municipal charters.
{¶ 13} We acknowledge that the board relied on our recent decision in Flak , 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329, which confused the law by stating that a county board of elections has authority to determine whether a proposed charter amendment exceeds the scope of authority to enact by initiative. Flak failed to recognize that the people's authority to amend a municipal charter arises only from Article XVIII, Section 9, not from Article II, Section 1f, and that caselaw construing the right of initiative afforded by Article II, Section 1f does not apply to the review of a proposed charter amendment. In Flak , we mistakenly conflated our jurisprudence regarding the amendment of municipal charters under Article XVIII, Section 9 of the Ohio Constitution with our jurisprudence regarding citizens' exercise of the right of initiative under Article II, Section 1f. See Twitchell at ¶ 17 (Kennedy, J., concurring in judgment only). As we discuss *500 below, boards of elections have no authority to review the substance of a proposed municipal-charter amendment; therefore, Flak should no longer be relied on as authority to the contrary. And because R.C. 3501.11(K)(2) expressly applies to initiative petitions and the amendment of county charters but does not mention the amendment of municipal charters, its constitutionality should be addressed in a case involving a county charter or a municipal ordinance proposed by initiative.
{¶ 14} The dissent frets that we should not apply constitutional provisions specifically addressing the amendment of a municipal charter to a case involving a proposed amendment to a municipal charter, because the parties have not argued that Article XVIII, Section 9 and caselaw construing that provision are controlling. But the parties can be forgiven for failing to brief this issue, because this court's short line of cases, beginning with Flak , mistakenly diverted from what had been settled law. Our inadvertence is not entitled to the protection of stare decisis. And while briefing would be helpful, it is impractical or impossible here given the compressed time frame of an expedited *1170 election case. In these circumstances, our prudential policy against addressing arguments not raised by the parties is not a barrier to addressing and remedying a clear mistake before it is repeated again. The alternative is to stay silent and allow boards of elections to continue to deny ballot access based on this court's erroneous statement of law rather than simply return to our near-century of jurisprudence regarding how to address proposals for the amendment of municipal charters. See, e.g ., State ex rel. Hinchliffe v. Gibbons , 116 Ohio St. 390, 395, 156 N.E. 455 (1927). If the dissent were able to present a genuine question of how Article XVIII, Sections 8 and 9 apply rather than merely attempt to sow confusion to justify reaching a constitutional issue that is not before us, we would be hesitant to proceed without briefing. But here, we stand on the rock of our case precedent providing the rule of decision.
Article XVIII, Sections 8 and 9 of the Ohio Constitution require the legislative authority to submit a proposed charter amendment to the electors by ordinance
{¶ 15} Relators seek to amend the city charter of Toledo. Article XVIII, Section 7 of the Ohio Constitution authorizes a municipality to "frame and adopt or amend" a charter form of government. Article XVIII, Section 9 sets forth the specific procedure for amending a municipal charter and provides:
Amendments to any charter framed and adopted as herein provided may be submitted to the electors of a municipality by a two-thirds vote of the legislative authority thereof, and, upon petitions signed by ten per centum of the electors of the municipality setting forth any such proposed amendment, *501 shall be submitted by such legislative authority. The submission of proposed amendments to the electors shall be governed by the requirements of section 8 as to the submission of the question of choosing a charter commission * * *. If any such amendment is approved by a majority of the electors voting thereon, it shall become a part of the charter of the municipality.
{¶ 16} This court has consistently recognized that petitions containing signatures from "ten per centum of the electors of the municipality setting forth any such proposed amendment," Article XVIII, Section 9, Ohio Constitution, triggers the duty of the legislative authority to submit the proposed charter amendment to the electorate. Westlake , 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, at ¶ 22 ; State ex rel. Commt. for Charter Amendment Petition v. Avon , 81 Ohio St.3d 590, 592, 693 N.E.2d 205 (1998) ; Morris v. Macedonia City Council , 71 Ohio St.3d 52, 54, 641 N.E.2d 1075 (1994). Contrary to the dissent's tortured, nonsensical reading of the provision, Article XVIII, Section 9 has always been read to mean that there are two methods to put a proposed charter amendment on the ballot-by a two-thirds vote of the legislative authority and by petitions signed by 10 percent of the electorate. This is both the literal interpretation and the only plausible interpretation, and it is telling that the only authority mustered by the dissent is caselaw directly contradicting its position.
{¶ 17} Article XVIII, Section 9 requires that proposed charter amendments be submitted to the electors in the same manner as in Article XVIII, Section 8, which provides for submitting to the electors the question whether a charter commission should be chosen to frame a charter. Article XVIII, Section 8 states, "The legislative authority of any city or village may by a two-thirds vote of its *1171 members, and upon petition of ten per centum of the electors shall forthwith, provide by ordinance for the submission to the electors, of the question, 'Shall a commission be chosen to frame a charter.' " Although the dissent expresses manufactured confusion over the extent of Section 8's application to proposed charter amendments, this court has been clear as to which procedural requirements from Section 8 apply to proposed charter amendments under Section 9 :
Article XVIII, Section 8 of the Ohio Constitution imposes two relevant time requirements on municipal legislatures when they receive petitions for charter amendments.
(1) If the petition contains a sufficient number of valid signatures, the legislature must "forthwith" provide by ordinance for the submission of the proposed amendment to the electors.
*502 (2) The ordinance must require that the matter be submitted at the next regular municipal election if one will occur no more than 120 days, and no less than 60 days, after passage of the ordinance.
(Footnote omitted.) State ex rel. Commt. for Charter Amendment Petition v. Maple Hts. , 140 Ohio St.3d 334, 2014-Ohio-4097, 18 N.E.3d 426, ¶ 3-5.
{¶ 18} "The 'manifest object' of Section 9 of Article XVIII 'is to provide the procedure for the submission of a charter amendment to electors' and these 'requirements are clear and complete, and are not to be added to or subtracted from.' " Westlake at ¶ 31, quoting Billington v. Cotner, 25 Ohio St.2d 140, 146, 267 N.E.2d 410 (1971). We have therefore explained that " 'Section 9 of Article XVIII, which incorporates the requirements of Section 8, allows, and on petition by ten percent of the electors, requires , the legislative authority of any city, e.g. , city council, to "forthwith" authorize by ordinance an election on the charter amendment issue.' (Emphasis sic.)" Westlake at ¶ 23, quoting Avon at 592, 693 N.E.2d 205.
{¶ 19} And once the legislative body of the municipality passes an ordinance placing the proposed charter amendment on the ballot, the duty of the board is to simply add the proposed charter amendment to the ballot. We have held that in placing a proposed amendment to a municipal charter on the ballot, the "board of elections has nothing but a ministerial role under the Constitution." State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections , 67 Ohio St.3d 334, 337, 617 N.E.2d 1120 (1993).
Relators failed to allege or prove that Toledo City Council passed an ordinance submitting the proposed charter amendment to the electors
{¶ 20} Relators focus on the role of the board in refusing to put the proposed charter amendment on the ballot. But this case turns not on the action of the board but the inaction of city council, so the board's reasoning in reaching its decision is not at issue; without an ordinance instructing the board to place the proposed amendment on the ballot, the board lacked the authority to add the proposed charter amendment to the ballot. The legislative authority has the duty-enforceable through a mandamus action-to enact an ordinance to place the matter on the ballot. Maple Hts. , 140 Ohio St.3d 334, 2014-Ohio-4097, 18 N.E.3d 426, at ¶ 24.
{¶ 21} In this case, there is neither allegation nor evidence that the city council passed an ordinance instructing the board to place the proposed amendment on the ballot. Rather, in an attempt to comply with the procedure set forth in Section 5 of the Toledo City Charter, the clerk of the *1172 city council submitted the *503 petition directly to the board. But that provision conflicts with the specific procedure set forth in the Ohio Constitution requiring the passage of an ordinance by the legislative authority, and in such a conflict, the Constitution prevails.
When the amendment provisions of a charter conflict with constitutional charter amendment provisions, the Constitution prevails because "[t]he paramount authority must prevail over the subordinate authority." State ex rel. Hinchliffe v. Gibbons (1927), 116 Ohio St. 390, 395, 156 N.E. 455 ; State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections (1993), 67 Ohio St.3d 334, 335-336, 617 N.E.2d 1120 ; Huebner , 75 Ohio St.3d at 383-384, 662 N.E.2d 339.
Westlake , 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, at ¶ 32.
{¶ 22} In their petition for an amendment of the charter, relators properly called on the "legislative authority to forthwith provide by Ordinance, for the submission to the electors of the City of Toledo, the following proposed amendment to the Charter of the City of Toledo." The city council failed to fulfill that duty in the first instance, but relators have not named it as a party in this mandamus action or sought a writ compelling it to comply with that duty. And the board of elections had no duty to place the proposed charter amendment on the ballot unless and until the city council passed an ordinance instructing the board to do so.
{¶ 23} Accordingly, the board of elections' decision not to place the proposed charter amendment on the ballot was correct; its reasoning was not.
Relators are not entitled to relief in mandamus
{¶ 24} To be entitled to a writ of mandamus, a relator must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of a respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. State ex rel. Waters v. Spaeth , 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13. Article XVIII, Sections 8 and 9 of the Ohio Constitution require the legislative authority to submit a proposed charter amendment to the electors by ordinance. Because the Toledo City Council failed to pass an ordinance submitting the proposed charter amendment in this case to the electors, the Lucas County Board of Elections was without authority to exercise even its ministerial duty to place the proposed amendment on the ballot. Because the proposed charter amendment was never properly before the board, we cannot say that relators had a clear legal right to their requested relief or that the board had a clear duty to provide it. Therefore, mandamus does not lie against the board, and relators have not sought a writ *504 compelling the city council to submit the proposed charter amendment to the electors by ordinance.
{¶ 25} Accordingly, we deny the writ.
Writ denied.
O'Donnell, French, and DeWine, JJ., concur.
Fischer, J., dissents, with an opinion joined by O'Connor, C.J., and DeGenaro, J.