[Cite as *Goddard v. Goddard*, 2022-Ohio-3113.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

LAURENCE V. GODDARD,

       Petitioner-Appellant,

- v -

DANIEL B. GODDARD,

       Respondent-Appellee.

CASE NO. 2021-G-0015

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2019 SP 000934

# **O P I N I O N**

Decided: September 6, 2022
Judgment: Reversed; remanded

*James R. Skirbunt*, Skirbunt & Skirbunt, LLC, 1375 East Ninth Street, Suite 3150, Cleveland, OH 44114 (For Petitioner-Appellant).

*Daniel B. Goddard*, pro se (Respondent-Appellee).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Laurence V. Goddard, appeals the trial court's order adopting the magistrate's decision and dismissing Laurence's petition for a civil stalking protection order ("CSPO") filed against appellee, Daniel B. Goddard. We reverse and remand.

{¶2} In 2015, the trial court entered a CSPO in favor of Laurence and against his son, Daniel. The order expired December 5, 2019.

{¶3} On November 20, 2019, pursuant to R.C. 2903.214, Laurence filed a second petition for a CSPO against Daniel. The trial court granted an ex parte order of protection.

{¶4} Daniel is a nonresident of Ohio. On October 13, 2020, Daniel filed a motion to dismiss for lack of personal jurisdiction. A hearing was held on the motion, at which both parties appeared. Laurence testified, and both parties submitted exhibits. The magistrate issued a decision on January 14, 2021, concluding the court lacked personal jurisdiction over Daniel and recommending dismissal. Laurence filed objections to the magistrate's decision, which the trial court overruled. Subsequently, the trial court adopted the magistrate's decision and dismissed Laurence's petition.

{¶5} Laurence raises two assignments of error on appeal, which we consider in reverse order:

> [1.] The Trial Court erred as a matter of law, and otherwise abused its discretion, by concluding that it lacks personal jurisdiction over Appellee.

> [2.] The Trial Court erred as a matter of law, and otherwise abused its discretion, by concluding that Appellee did not waive the defense of lack of personal jurisdiction.

{¶6} In his second assigned error, Laurence argues that the trial court erred by concluding that Daniel did not waive the defense of lack of personal jurisdiction.

{¶7} "It is rudimentary that in order to render a valid personal judgment, a court must have personal jurisdiction over the defendant." *Maryhew v. Yova*, 11 Ohio St.3d 154, 156, 464 N.E.2d 538 (1984). "This may be acquired either by service of process upon the defendant, the voluntary appearance and submission of the defendant or his legal representative, or by certain acts of the defendant or his legal representative which constitute an involuntary submission to the jurisdiction of the court. The latter may more accurately be referred to as a waiver of certain affirmative defenses, including jurisdiction over the person under the Rules of Civil Procedure." (Footnote omitted.) *Id.*

2

{¶8}   Pursuant to Civ.R. 12(B)(2), a defense of lack of personal jurisdiction may be made either in the responsive pleading, if one is required, or by motion before pleading if a further pleading is permitted.  *Maryhew* at 157 ("the rule gives the pleader an option to assert the defense of lack of jurisdiction over the person either by way of a motion prior to any pleading or in the responsive pleading to the complaint").  "Civ.R. 12(B) must be read in conjunction with Civ.R. 12(G) and (H)."  *Id.*  Civ.R. 12(G) provides, in pertinent part, that "[a] party who makes a motion under this rule must join with it the other motions herein provided for and then available to him."  Civ.R. 12(H)(1) provides that "[a] defense of lack of jurisdiction over the person * * * is waived (a) if omitted from a motion in the circumstances described in subdivision (G), or (b) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereto permitted by Rule 15(A) to be made as a matter of course."

{¶9}   Daniel filed his motion to dismiss for lack of personal jurisdiction eleven months after Laurence filed his petition.  During those eleven months, Daniel filed two pro se motions to continue and to appear by video conferencing, stating he needed more time to prepare a defense.  Daniel was briefly represented by counsel, who also filed a motion to continue.  Laurence argues that by filing these motions prior to raising the personal jurisdiction defense, Daniel waived the defense.

{¶10}  We reject Laurence's argument.  First, motions to continue and to appear by video conferencing do not constitute a responsive pleading.  *See* Civ.R. 7(A).  Further, such requests do not constitute motions made pursuant to Civ.R. 12(B), as referenced within Civ.R. 12(G), which would result in the waiver of an affirmative defense under Civ.R. 12(H)(1).  *See Maryhew*, 11 Ohio St.3d at 158.  As stated by the Supreme Court

3

in *Maryhew*, "[w]e are supported in this conclusion by a number of federal cases which have had occasion to interpret Fed.R.Civ.P. 12 which is comparable to the Ohio rule." (Parallel citations omitted.) *Id.*, citing *Bartner v. Debiasse* 20 F.R.D. 355 (E.D.N.Y.1957) (where the defendant obtained two extensions "to answer or otherwise move," and the court held that the defendant did not waive his right to assert lack of jurisdiction over his person).

{¶11} Accordingly, the trial court did not err in concluding that Daniel did not waive the defense of lack of personal jurisdiction.

{¶12} Laurence's second assigned error is without merit.

{¶13} In his first assigned error, Laurence challenges the trial court's conclusion that Laurence "failed to show [that personal] jurisdiction is conferred by Ohio's long-arm statute and associated Civil Rules."

{¶14} When a defendant challenges the trial court's personal jurisdiction and the court holds an evidentiary hearing, it is the plaintiff's burden to prove jurisdiction exists by a preponderance of the evidence. *See State ex rel. DeWine v. 9150 Group, L.P.*, 2012-Ohio-3339, 977 N.E.2d 112, ¶ 8 (9th Dist.). "Personal jurisdiction is a question of law that appellate courts review de novo." *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, ¶ 27.

{¶15} "Determining whether an Ohio trial court has personal jurisdiction over a nonresident defendant involves a two-step analysis: (1) whether the long-arm statute and the applicable rule of civil procedure confer jurisdiction and, if so, (2) whether the exercise of jurisdiction would deprive the nonresident defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution." (Citation omitted.)

4

*Id.* at ¶ 28; *accord Fallang v. Hickey*, 40 Ohio St.3d 106, 107, 352 N.E.2d 117 (1988), citing *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

{¶16} Ohio's long-arm statute enumerates specific acts that give rise to the personal jurisdiction of Ohio courts over nonresident defendants. It provides, in relevant part, that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's * * * [c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state[.]" R.C. 2307.382(A)(6).

{¶17} Civ.R. 4.3(A)(9), which mirrors the long-arm statute, permits service of process on nonresidents when "an individual * * * who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's * * * [c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person to be served might reasonably have expected that some person would be injured by the act in this state[.]"

{¶18} The special statutory proceeding for a CSPO brought pursuant to R.C. 2903.214 is civil in nature. *See* Civ.R. 65.1(A) and *Post v. Leopardi*, 11th Dist. Trumbull No. 2019-T-0061, 2020-Ohio-2890, ¶ 10. When filing a petition for CSPO, the petitioner must allege that the respondent engaged in a violation of R.C. 2903.211 (menacing by stalking) against the person(s) to be protected by the order. R.C. 2903.214(C)(1). R.C. 2903.211 defines "menacing by stalking," in relevant part, as follows:

> (A)(1) *No person by engaging in a pattern of conduct shall* knowingly cause another person to believe that the offender

5

will cause physical harm to the other person or a family or household member of the other person or *cause mental distress to the other person or a family or household member of the other person.* In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs. [Emphasis added.]

(2) No person, through the use of any form of written communication or any electronic method of remotely transferring information, including, but not limited to, any computer, computer network, computer program, computer system, or telecommunication device shall post a message or use any intentionally written or verbal graphic gesture with purpose to do either of the following:

(a) Violate division (A)(1) of this section[.]

{¶19} Although R.C. 2903.211 constitutes the criminal offense of menacing by stalking, these acts may also fall within the "tortious" conduct category of R.C. 2307.382(A)(6) and Civ.R. 4.3(A)(9). *See M.W. v. D.M.*, 8th Dist. Cuyahoga No. 105758, 2018-Ohio-392, ¶ 15 (reaching the same conclusion with respect to the "tortious" conduct category of R.C. 2307.382(A)(3))*; Haas v. Semrad*, 6th Dist. Lucas No. L-06-1294, 2007-Ohio-2828, ¶ 17 (reaching the same conclusion in the context of a domestic violence CPO brought pursuant to R.C. 3113.31, which defines domestic violence as including conduct constituting menacing by stalking).

{¶20} Here, Laurence alleged in his petition that since the 2015 CSPO was issued, Daniel has been attacking and threatening him indirectly by emailing his attorneys. These allegations stem from the electronic communications that were

6

introduced during the hearing on the motion to dismiss.  The following are excerpts from

a few of the email exhibits, all of which were sent to Laurence's attorneys:

> April 3, 2017: "* * * sleep well tonight * * *. don't worry, there are still more laughs to come. We have only just begun :) the funniest part comes at the end when you three foolish jackals are all disbarred and God willing, arrested, along with your fool for a client. once the four of you are all in jail I will be the one doing the lol'ing. that's when I will rest. do you knuckleheads still think you can double cross me and outsmart me and get away with it? * * * God has protected me because I am Jewish and I am a believer and he has smote you because you are wicked in your ways and you do not respect my god or follow the law as is proscribed in the holy scriptures. I have a phone call scheduled with [the] head of the disciplinary committee * * *. * * * sleep well tonight my precious slaves. you will need your rest, for your coming days will make you weary. while suicide is always an option, I urge you to accept the lord as your savior and to confess all your sins to him. you have nothing to lose. he has been watching this whole time and he already knows all."

> April 23, 2017: "my precious slaves, it has come to my attention that you have attempted to hire or have hired someone to have me killed. i want you to know that i will be ready for anything that you cowards try to do to me and i will respond accordingly with full force. i refuse to die to further your twisted agenda. i have a special super duper extra exciting surprise waiting for your comrade in arms. i have instructed the appropriate authorities, including but not limited to the cleveland police forces, the new york police, the nsa, the cia, and the fbi, as well as my friends and family that if anything is to happen to me to fully investigate all of you and your client first. * * * i am watching you all very carefully, and i am ready to defend myself by any means from you lying, thieving, fraudulent criminal clown syndicate. * * *"

> May 13, 2017: "Jackals, because there is a restraining order in place I cannot send this message directly to your client so I need you to forward this to him and copy me on the forward so I know he has received my final attempt to extend an olive branch * * * as it pertains to the concept of a settlement. * * *"

> September 27, 2017: "* * * The trustee has obtained a restraining order against me under fraudulent and false

7

Case No. 2021-G-0015

circumstances in order to prevent me from communicating with him or other members about the trust and the llc. Maybe that kind of lie will pass in corrupted small time geauga county court houses but it won't get you very far with the IRS and federal government."

July 22, 2018: "you and your boyfriend can keep playing your weird little games, i'm a multimillionaire. i don't need this tiny tiny amount of money you are holding over my head. we won't conduct any further talks until all restraining orders expire. * * * perhaps if you were willing to accept a jewish god in your life you would not have so many problems but I understand, though I don't appreciate, your allegiance to satan."

August 10, 2018: "* * * I know I have been a total d***head and I really really hate how I am behaving but you and by proxy, your client, are treating me like an animal instead of the sophisticated aristocratic member of high society that I actually am. So you are creating a self fulfilling prophecy. We should talk on the phone like two normal people. * * * We just have to be kind to each other and see the humor in things. * * * You are not gonna get restraining orders again. The first time was just a gift to you. It was what I wanted. It won't happen again. * * * There are so many different government agencies looking into you guys right now. At some point somebody is gonna see it my way and you will have problems. * * * If you choose to disregard this message I will just continue going down my own path but you really may not like how that turns out and the reason I say that is because I am contacting every possible government type agency that may possibly have a remote interest in this. I am relentless like a dog who has yet to be castrated. But sometimes I rather just cut my nuts off know what I mean? * * *"

August 13, 2018: "also if you can convince geauga county to change their laws so the restraining order can be renewed i am still willing cooperate with that in exchange for a ripe mango 3 pairs of tube socks and an unopened back of baseball cards. * * *"

August 25, 2018 (8:24 p.m.): "* * * NoW IT MAKES SENSE WHY HE MADE FAKE RESTRAINING ORDERS AGAINST ME!!!!! THE ARAB AND THE JEW fighting over money LOL!!"

August 25, 2018 (8:54 p.m.): "this all makes so much more sense. of course the arab is scared and forged a restraining

8

order to protect himself from his own misdeeds: he broke the law multiple times on my watch. he is going to jail. he should be scared of the cops not me. * * *"

{¶21} Thus, Laurence's petition is entirely based on the content of the electronic communications Daniel sent to Laurence's attorneys in Ohio. "It has been recognized that the existence of telephonic and electronic communications that originate from out-of-state respondents to in-state petitioners satisfies Ohio's long-arm statute for the purpose of protection orders as long as the content of the communications forms the basis of the alleged tortious conduct." *M.W.* at ¶ 14, citing *Burnett v. Burnett*, 6th Dist. Sandusky No. S-10-050, 2012-Ohio-2673, ¶ 21.

{¶22} As alleged, Daniel's conduct is tortious in nature, was committed by an act outside Ohio with the purpose of injuring Laurence and should have led Daniel to expect that Laurence would be injured as described in R.C. 2903.211 (menacing by stalking), specifically by causing mental distress to Laurence. We conclude, therefore, that Laurence established a basis for the trial court to exercise personal jurisdiction over Daniel under R.C. 2307.382(A)(6) and Civ.R. 4.3(A)(9). The trial court's conclusion to the contrary is unsupported and was reached in error.

{¶23} We must next determine whether the exercise of long-arm jurisdiction comports with constitutional due process—a determination the trial court did not reach.

{¶24} "It is well-established that '* * * due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Anilas, Inc. v. Kern*, 31 Ohio St.3d 163, 164, 509 N.E.2d 1267 (1987), quoting *Internatl. Shoe*, 326 U.S.

9

at 316. "Ordinarily, this requires that a party 'purposefully * * * [avail] itself of the privilege of conducting activities within the forum State * * *.'" *Anilas* at 164, quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.E.2d 1283 (1958).

{¶25} "Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." (Citation omitted.) *Kauffman Racing*, 2010-Ohio-2551, at ¶ 46. Here, because Daniel does not have continuous and systematic contacts with Ohio, Laurence must establish that the trial court has specific jurisdiction. "Specific jurisdiction applies when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Id.* at ¶ 47, quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), fn. 8. There are three issues to address when considering whether the exercise of specific jurisdiction is justified: "'"First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."'" *Kauffman Racing* at ¶ 49, quoting *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir.2002), quoting *S. Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 281 (6th Cir.1968).

{¶26} Here, Laurence's petition for a stalking CPO arose from Daniel's purposeful actions of emailing Laurence's attorneys in Ohio with the alleged intent to cause harmful consequences to Laurence, his father, who resides in Ohio. In this context, the email communications constitute sufficient minimum contacts with Ohio. Further, the exercise

10

of jurisdiction does not offend traditional notions of fairness. It should be foreseeable to one who makes threatening communications that he may be haled into the jurisdiction to answer a petition seeking protection against him. *See Haas*, 2007-Ohio-2828, at ¶ 21. "While the burden on an out-of-state defendant who is forced to defend in Ohio is not insignificant, the interest in providing protection through local forums against defendants who purposefully direct threatening communications into Ohio outweighs [that] burden in this instance." *Id.* We conclude, therefore, that the trial court's exercise of jurisdiction is reasonable and would not deprive Daniel of the right to due process of law under the United States Constitution.

{¶27} Laurence's first assigned error has merit.

{¶28} The judgment is reversed. The matter is remanded for further proceedings consistent with this opinion.

MARY JANE TRAPP, J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2021-G-0015