[Cite as *Curry v. Bettison*, 2023-Ohio-1911.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| JEQUAN CURRY | : | |
| | : | |
| Appellee | : | C.A. No. 29662 |
| | : | |
| v. | : | Trial Court Case No. 2022 CV 03319 |
| | : | |
| TONY BETTISON | : | (Civil Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 9, 2023

. . . . . . . . . . .

JEQUAN CURRY, Appellee, Pro Se

ANTHONY S. VANNOY, Attorney for Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-Appellant Tony Bettison appeals from a judgment granting a civil stalking protection order ("CSPO") in favor of pro se Plaintiff-Appellee Jequan Curry and Curry's additional household member, A.S. According to Bettison, the trial court erred in three ways: (1) by admitting video evidence as an exhibit that constituted an unfair surprise; (2) by granting the protective order based on insufficient evidence; and (3) by

granting an order that was against the manifest weight of the evidence. Curry did not file a brief.

**{¶ 2}** Having reviewed this matter, we conclude that Bettison is not permitted to challenge the CSPO's issuance because he failed to object to the decision before filing this appeal, as is required by Civ.R. 65.1(G). Bettison's alleged errors may also not be considered under the plain error doctrine because Civ.R. 65.1, unlike Civ.R. 53(D)(3)(b)(iv), does not provide for plain error review where a party fails to object to a decision in the trial court. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 3}** On July 28, 2022, Curry filed a pro se petition in the trial court, seeking a CSPO and an ex parte emergency protection order against Bettison on behalf of Curry and Curry's child, A.S. The petition alleged that on July 26, 2022, Bettison had made several statements threatening Curry's life. The petition further alleged that on July 27, 2022, Bettison came to Curry's home and also sent Curry a video of Curry's cars in the parking lot in front of his home. On July 28, 2022, the court filed a temporary order restraining Bettison from threatening, assaulting, or stalking Curry and A.S. and from communicating with them or others if the communication would likely cause annoyance or alarm to Curry and A.S. In addition, the order required Bettison to stay away from Curry's and A.S.'s residence, property, school, and place of employment. The order was effective from July 28, 2022, until January 28, 2023.

**{¶ 4}** On July 28, 2022, the court also filed an order administratively staying the

case and continuing the full hearing on the CSPO until disposition of any related criminal proceedings. In the meantime, the CSPO remained in effect.

{¶ 5} On October 28, 2022, a magistrate set the matter for a full hearing on November 14, 2022. Both Curry and Bettison appeared at the hearing; Curry appeared pro se and Bettison was represented by an attorney. After hearing testimony, the magistrate granted a final CSPO on November 21, 2022. The order imposed the same conditions as the temporary order and added a "Brady Disqualifier," prohibiting Bettison from purchasing or possessing any firearms. The final order was effective from November 21, 2022, until January 31, 2024.

{¶ 6} In the final order, the magistrate stated that Curry had: "credibly testified that on July 26, 2022, Respondent made multiple threats to Petitioner over the course of the day. These threats included 'Jequan going to die' and that Respondent 'will deal with him.' The next day, Respondent came to Petitioner's home and recorded his vehicle. Prior to this incident, Respondent tried to attack Petitioner. Petitioner provided the Magistrate with recordings of Respondent's threats, which were collectively marked as Exhibit 1." Final Order of Protection (Nov. 21, 2022), p. 2.

{¶ 7} The magistrate noted that Bettison had denied threatening Curry. However, having reviewed Exhibit 1, the magistrate found that the recordings corroborated Curry's testimony and that Bettison had made unprovoked threats to harm Curry. Because each phone conversation was a separate incident, the magistrate further concluded that Bettison had threatened to harm Curry on multiple occasions. *Id.*

{¶ 8} The trial court adopted the magistrate's decision on November 21, 2022.

Bettison did not file any objections in the trial court; instead, he filed a notice of appeal to this court on December 6, 2022.

## II.  Discussion

{¶ 9} Under R.C. 2903.214, persons are allowed to seek protection orders against any person who is over the age of 18 and has engaged in a violation of R.C. 2903.211 (menacing by stalking).  *See* R.C. 2903.214(C).  Among other things, menacing by stalking includes "engaging in a pattern of conduct" that knowingly causes "another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person."  R.C. 2903.211(A).

{¶ 10} R.C. 2903.214 contains various procedures, including an ex parte hearing at which the court may enter orders needed for a person's safety and protection, with the requirement that the court schedule a full hearing for a date within 10 days after the ex parte hearing.  R.C. 2903.214(D)(1) and (2)(a).  "After an ex parte or full hearing, the court may issue any protection order, with or without bond, that contains terms designed to ensure the safety and protection of the person to be protected by the protection order, including, but not limited to, a requirement that the respondent refrain from entering the residence, school, business, or place of employment of the petitioner or family or household member."  R.C. 2903.214(E)(1)(a).  Orders are to be valid "until a date certain but not later than five years from the date of" their issuance.  R.C. 2903.214(E)(2)(a).

{¶ 11} CSPO petitions are governed by Civ.R. 65.1, which contains special requirements relating to referrals to magistrates. Civ.R. 65.1 was "enacted, in part, to expedite the process for obtaining a protection order after a full hearing, and some of the provisions of Civ.R. 53 are incompatible with this goal * * *." *M.D. v. M.D.*, 2018-Ohio-4218, 121 N.E.3d 819, ¶ 48 (8th Dist.), citing 2012 Staff Note to Civ.R. 65.1.

{¶ 12} Under Civ.R. 65.1(F)(3)(c)(ii), "[w]hen a magistrate has denied or granted a protection order after a full hearing, the court may adopt the magistrate's denial or granting of the protection order upon review of the order and a determination that there is no error of law or other defect evident on the face of the order." This occurred here. Furthermore, "[a] court's adoption, modification, or rejection of a magistrate's denial or granting of a protection order after a full hearing shall be effective when signed by the court and filed with the clerk." Civ.R. 65.1(F)(3)(c)(v). Again, this occurred here on November 21, 2022.

{¶ 13} Unlike situations involving general referrals to magistrates, a magistrate's decision to grant or deny protection orders after a full hearing "is not subject to the requirements in Civ.R. 53(D)(2) or (3), which govern procedures for moving to set aside a magistrate's order and objecting to a magistrate's decision." *Runkle v. Stewart*, 2d Dist. Miami No. 2018-CA-27, 2019-Ohio-2356, ¶ 7, citing Civ.R. 65.1(F)(3)(b). Before Civ.R. 65.1 was amended in 2016, parties had the option to either file timely objections in the trial court or to immediately appeal the court's adoption of the magistrate's decision. *Id.* at ¶ 8, fn.1, citing *J.S. v. D.E.*, 7th Dist. Mahoning No. 17 MA 0032, 2017-Ohio-7507, ¶ 19. (Other citations omitted.)

{¶ 14} However, as a result of the 2016 amendments, the right to immediately appeal rather than filing objections was eliminated. After the amendments, Civ.R. 65.1(G) stated that:

Notwithstanding the provisions of any other rule, an order entered by the court under division (F)(3)(c) or division (F)(3)(e) of this rule is a final, appealable order. However, a party must timely file objections to such an order under division (F)(3)(d) of this rule prior to filing an appeal, and the timely filing of such objections shall stay the running of the time for appeal until the filing of the court's ruling on the objections.

{¶ 15} According to the Staff Notes for the 2016 amendments:

Division (G) of this rule is amended to require that a party must file objections prior to filing an appeal from a trial court's otherwise appealable adoption, modification, or rejection of a magistrate's ruling. This amendment is grounded on two key principles. First, it promotes the fair administration of justice, including affording the trial court an opportunity to review the transcript and address any insufficiency of evidence or abuse of discretion that would render the order or a term of the order unjust. Second, it creates a more robust record upon which the appeal may proceed.

{¶ 16} Under Civ.R. 65.1(F)(3)(d)(i), "[a] party may file written objections to a court's adoption, modification, or rejection of a magistrate's denial or granting of a protection order after a full hearing, or any terms of such an order, within fourteen days

of the court's filing of the order." Here, no objections were filed within 14 days of the trial court's order. Instead, Bettison simply filed a notice of appeal to our court.

{¶ 17} Since the 2016 amendments, we have held that failing to file timely objections as required precludes parties from challenging the trial court's decision on appeal. *E.g.*, *Runkle*, 2d Dist. Miami No. 2018-CA-27, 2019-Ohio-2356, at ¶ 10, and *Brent v. Siler*, 2d Dist. Montgomery No. 29624, 2023-Ohio-1068, ¶ 11.

{¶ 18} Courts have noted that a split exists among appellate districts concerning whether noncompliance with Civ.R. 65.1(G) is jurisdictional. While the majority of districts have held that noncompliance is jurisdictional, our district, along with the Third District Court of Appeals, has concluded the matter is not jurisdictional. *See Hill v. Ferguson*, 1st Dist. Hamilton No. C-210278, 2022-Ohio-13, ¶ 10, citing *Florenz v. Omalley*, 2020-Ohio-4487, 158 N.E.3d 1009, ¶ 9-10 (2d Dist.); *Danison v. Blinco*, 3d Dist. Crawford No. 3-18-19, 2019-Ohio-2767, ¶ 7-8. In *Hill*, the First District Court of Appeals decided it had jurisdiction over the appeal but declined to address the appellant's arguments because she had failed to file objections in the trial court. *Id.* at ¶ 12-13.

{¶ 19} As noted, we have allowed appeals to proceed without dismissing them due to lack of jurisdiction. However, we have taken inconsistent approaches in our discussion, varying from not considering the merits to actually considering the merits or some form of the merits of a particular case where a party failed to object in the trial court.

{¶ 20} In the majority of cases where an appellant failed to file objections, we have not considered the merits on any basis. *See Anderson v. Gregory*, 2d Dist. Montgomery No. 28277, 2019-Ohio-2346, ¶ 9; *Runkle*, 2d Dist. Miami No. 2018-CA-27, 2019-Ohio-

2356, at ¶ 10; *Whatley v. Canales*, 2d Dist. Montgomery No. 28382, 2020-Ohio-213, ¶ 9-10; *Fecke v. Sizemore*, 2d Dist. Montgomery No. 28536, 2020-Ohio-2851, ¶ 10; *Elijah v. Mays*, 2d Dist. Montgomery No. 28863, 2021-Ohio-866, ¶ 6; *Steele v. Steele*, 2d Dist. Champaign No. 2020-CA-3, 2021-Ohio-148, ¶ 7; *Boggs v. Calaway*, 2d Dist. Champaign No. 2020-CA-38, 2021-Ohio-2528, ¶ 4; and *Cobia v. Mays*, 2d Dist. Montgomery No. 28862, 2021-Ohio-863, ¶ 6.

**{¶ 21}** In contrast, in several cases, we have considered an appellant's arguments to varying degrees despite the appellant's failure to file objections in the trial court. *Compare Florenz,* 2020-Ohio-4487, 158 N.E.3d 1009, at ¶ 15 (stating that "[e]ven if" we considered appellant's argument, no basis for reversal existed because appellant failed to file a transcript); *Rathburn v. Watson*, 2d Dist. Montgomery No. 28700, 2020-Ohio-5213, ¶ 10 (stating that "[e]ven if" we considered appellant's arguments, there was no basis for reversal because the appellant failed to file a hearing transcript); *Henderson v. Fowler*, 2d Dist. Montgomery No. 28765, 2021-Ohio-144, ¶ 12 (also using an "[e]ven if" analysis due to lack of a hearing transcript); *Clements v. Brown*, 2d Dist. Montgomery No. 29311, 2022-Ohio-1959, ¶ 12 (noting that "[e]ven if" we considered appellant's arguments, they provided no reason for reversal as they were based on factual allegations. However, appellant had agreed to waive the right to a full hearing.); *Brent,* 2d Dist. Montgomery No. 29624, 2023-Ohio-1068, at ¶ 11 (finding no error of law on the face of the decision, finding that the decision to grant a protective order was supported by competent credible evidence, and finding that the magistrate did not abuse her discretion in including the specific terms in the order).

{¶ 22} An argument could be made that the inconsistency might be due to concern over potential confusion caused by language from Civ.R. 65.1(G) that has been included in civil protection order forms. This language indicated that an order could be immediately appealed but did not include a warning about filing timely objections. The first expression of this concern occurred in *Florenz*. *Florenz* at ¶ 14. None of our opinions issued prior to *Florenz* expressed this concern. *See Anderson*, *Runkle*, *Whatley*, and *Fecke*.

{¶ 23} *Florenz* involved an appellant's failure to file objections to a domestic violence civil protection order ("DVCPO"). *Id*. at ¶ 11. After noting that this failure precluded the appellant from challenging the trial court's decision, we made the following observations:

> We are troubled by form language in the DVCPO regarding Civ.R. 65.1. Civ.R. 65.1 is clear that magistrate decisions after a full hearing are not subject to the requirements in Civ.R. 53(D)(2) or (3). *See* Civ.R. 65.1(F)(3)(b); * * *. Of relevance here, the DVCPO need not comply with Civ.R. 53(D)(3)(a)(iii), which requires a magistrate decision to "indicate conspicuously that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, * * * unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b)."
>
> However, the DVCPO highlighted portions of Civ.R. 65.1. It stated that the magistrate's order was not governed by Civ.R. 53(D), timely

objections did not stay the execution of the order, objections had to conform to Civ.R. 65.1(F)(3)(d), the trial court's adoption of the magistrate's order was not effective until signed by the court and filed with the clerk, and "[n]otwithstanding the provisions of any other rule, an order entered by this court under Civ.R. 65.1(F)(3)(c) is a final appealable order that can be appealed upon issuance of the order."

In our view, the notification regarding Civ.R. 65.1 suggested that objections were optional and that the order could be appealed immediately without filing objections. Specifically, the inclusion of the language from Civ.R. 65.1(G) indicating that the order could be immediately appealed was misleading in the absence of additional information that timely objections were required prior to filing an appeal. While the magistrate was not required by rule to inform the parties about the need to object, the decision to provide some information about Civ.R. 65.1 to the parties triggered an obligation to provide complete and accurate information.

*Id.* at ¶ 12-14. Notably, *Florenz* was decided after Civ.R. 65.1 was amended in 2016 to eliminate the choice of either immediately appealing from the order or objecting in the trial court to the order.

**{¶ 24}** *Florenz* was decided on September 18, 2020, and has been cited in seven later cases issued by our appellate district. Of these cases, four expressed the same concerns. *See Steele*, 2d Dist. Champaign No. 2020-CA-3, 2021-Ohio-148, at ¶ 5 (involving a DVCPO); *Elijah,* 2d Dist. Montgomery No. 28863, 2021-Ohio-866, at ¶ 6

(involving a CSPO); *Boggs,* 2d Dist. Champaign No. 2020-CA-38, 2021-Ohio-2528*,* at ¶ 4 (involving a DVCPO); and *Cobia,* 2d Dist. Montgomery No. 28862, 2021-Ohio-863, at ¶ 6 (involving a CSPO).   However, as noted, these cases did not consider the merits in any way, either actually or speculatively.

{¶ 25} Of the three remaining cases citing *Florenz*, two did not mention any such concerns but still used an "even if" analysis.   *Rathburn*, 2d Dist. Montgomery No. 28700, 2020-Ohio-5213, at ¶ 10 (CSPO); *Clements*, 2d Dist. Montgomery No. 29311, 2022-Ohio-1959, at ¶ 12 (CSPO).   Only one case both reiterated our concerns over this issue and used an "even if" analysis.   *See Henderson*, 2d Dist. Montgomery No. 28765, 2021-Ohio-144, at ¶ 10 and 12 (involving a sexually oriented civil protection order).

{¶ 26} Notably, all these cases, other than *Clements*, were decided before the Supreme Court of Ohio amended the CSPO form, effective April 15, 2021.   *See* Sup.R. Form 10.03-F.   "[T]he new form does not mention Civ.R. 65.1(G)'s objection requirement."   *Groeschen v. Johns*, 1st Dist. Hamilton No. C-210306, 2022-Ohio-359, ¶ 7, fn.1, referencing Sup.R. 10.03-F.   The First District Court of Appeals remarked in *Groeschen* that "the trial court was simply using the form approved by the Supreme Court."   *Id*.   However, the First District was "concerned that the form does 'not include a conspicuous warning of the consequences of failure to object to an order entered under Civ.R. 65.1(F)(3)(c) or Civ.R. 65.1(F)(3)(e) within fourteen days.' "   *Id*. at ¶ 7, fn.1, quoting *Daniels v. Daniels*, 4th Dist. Scioto No. 20CA3910, 2021-Ohio-2076, ¶ 15.[1]

---

[1] Both *Florenz* and *Daniels* involved DVCPOs.   *See Florenz* at ¶ 12, and *Daniels* at ¶ 14. Like the form for CSPOs (Sup.R. Form 10.03-F), the DVCPO form (currently Sup.R. Form10:01-I) was amended effective April 15, 2021.   The relevant content of the two forms after April 2021 is the same, i.e., neither mentions objections under Civ.R. 65.1(G).

{¶ 27} Despite this concern, the First District did not address any of the appellant's arguments. The court stated that because the appellant failed to file objections, he "cannot challenge the trial court's decision to adopt the CSPO in this appeal." *Id*. at ¶ 8, citing *Hill,* 1st Dist. Hamilton No. C-210278, 2022-Ohio-13.

{¶ 28} Since *Florenz* and other cases expressing concern were issued before the new forms were created, the Supreme Court of Ohio could have amended the forms to include references to the need to file objections. Instead, the court chose not to do so. In fact, the court eliminated any reference to Civ.R. 65.1 other than referencing the clerk's service requirement under Civ.R. 65.1(C)(3). *See* Sup.R. Form 10.03-F, p. 5 (Apr. 5, 2021). This is the form that was used in the case before us.

{¶ 29} In light of the preceding discussion, we conclude that the Supreme Court of Ohio does not agree with the concerns *Florenz* expressed in 2020. As noted, since that time, the court has elected to delete any reference to Civ.R. 65.1 objections from its civil protection order forms.

{¶ 30} Admittedly, the court's Rules of Superintendence, while designed to expedite disposition of cases, do not have the same legal effect as its rules of practice and procedure, which the legislature must approve. *See State v. Singer*, 50 Ohio St.2d 103, 109-110, 362 N.E.2d 1216 (1977); *In re Z.H.*, 2013-Ohio-3904, 995 N.E.2d 295, ¶ 16 (9th Dist.); *In re J.S.*, 2d Dist. Clark No. 2013-CA-48, 2013-Ohio-5756, ¶ 44 (noting the superintendence rules are only general guidelines for courts and lack the force of statutory law).

{¶ 31} Again, we assume the Supreme Court of Ohio, in amending its

superintendence rules, was aware of the type of concerns that have been mentioned, even though the court did not explicitly say so when it amended its forms in 2021. Nonetheless, at a minimum, we would be remiss in ignoring the 2021 changes.

{¶ 32} More importantly, however, the rules of practice and procedure do have the force of law, as the legislature has approved them. *E.g., Cox v. Dayton Pub. Schools Bd. of Edn.*, 147 Ohio St.3d 298, 2016-Ohio-5505, 64 N.E.3d 977, ¶ 15, citing Ohio Constitution, Article IV, Section 5(B) ("the Ohio Rules of Civil Procedure are 'prescribed by law' "). The Modern Courts Amendment, Section 5(B), Article IV of the Ohio Constitution, "along with Civ.R. 1(A), recognizes that where conflicts arise between the Civil Rules and the statutory law, the rule will control the statute on matters of procedure and the statute will control the rule on matters of substantive law." *Boyer v. Boyer*, 46 Ohio St.2d 83, 86, 346 N.E.2d 286 (1976). *Accord Ferguson v. State*, 151 Ohio St.3d 265, 2017-Ohio-7844, 87 N.E.3d 1250, ¶ 21.

{¶ 33} "Civ.R. 1(C) limits the preemptive reach of the Civil Rules" because it says that " '[t]hese rules, to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure * * * in all other special statutory proceedings; provided, that where any statute provides for procedure by a general or specific reference to all the statutes governing procedure in civil actions such procedure shall be in accordance with these rules.' " *Ferguson* at ¶ 21, quoting Civ.R. 1(C). The court further stated in *Ferguson* that:

Civ.R. 1(C) thus acknowledges that the General Assembly may create procedural rules for special statutory proceedings that would make a civil

rule "clearly inapplicable." There are two considerations in determining whether the Civil Rules do not apply: whether the procedural statute governs a special statutory proceeding and whether that statute renders the civil rule at issue "clearly inapplicable."

*Id.*

{¶ 34} There is no question that R.C. 2903.214 is a special statutory proceeding. Civ.R. 65.1(A) and (F)(3) specifically describe proceedings under the civil protection statutes, including R.C. 2903.214, as "special statutory proceedings." *See also Oliver v. Johnson*, 4th Dist. Jackson No. 06CA16, 2007-Ohio-5880, ¶ 1 ("[a] civil protection order is a special statutory remedy that is designed to prevent violence, not to compensate the victim for damages"); *Goddard v. Goddard*, 2022-Ohio-3113, 195 N.E.3d 1106, ¶ 18 (11th Dist.) (noting R.C. 2903.214 is a "special statutory proceeding").

{¶ 35} Despite this classification, there has been no indication of an intent to render Civ.R. 65.1 (or any other Ohio Civil Rule) "clearly inapplicable" to R.C. 2903.214. In fact, the opposite is true. The legislature has specifically said that the Ohio Civil Rules apply.

{¶ 36} R.C. 2903.214 was originally enacted as part of H.B. 302 and became effective on July 29, 1998. *See* H.B. 302,1998 Ohio Laws 143. Originally, 2903.214(G) stated that:

Any proceeding under this section shall be conducted *in accordance with the Rules of Civil Procedure*, except that a protection order may be obtained under this section with or without bond. An order issued under this section, other than an ex parte order, that grants a protection order, or

that refuses to grant a protection order, is a final, appealable order. The remedies and procedures provided in this section are in addition to, and not in lieu of, any other available civil or criminal remedies.

(Emphasis added.)

{¶ 37} Consequently, rather than showing an intent to render the Ohio Civil Rules inapplicable, R.C. 2903.214(G) explicitly embraced them. Furthermore, the version of R.C. 2903.214(G) in effect when Civ.R. 65.1 was adopted on July 1, 2012, was the same as the original statute. *See* Am.Sub.H.B. 10, 2010 Ohio Laws 21, effective June 17, 2010. Likewise, this part of the statute had still not changed when Civ.R. 65.1 was amended in 2016. *See* Am. Sub. S.B. 177, 2014 Ohio Laws 184, effective March 23, 2015.

{¶ 38} In addition, after Civ.R. 65.1 was amended in 2016, no relevant changes occurred either in R.C. 2903.214(G) or the rest of the statute. In 2017, subdivision (G) became (G)(1), and (G)(2) was added to cover situations in which courts could order expungement of ex parte orders on their own motion. *See* Am.Sub.H.B. 49, 2017 Ohio Laws 14, effective September 29, 2017. This had no impact on the pertinent wording of the statute.

{¶ 39} Between 2017 and 2022, R.C. 2903.214 was amended a number of times, but again, no changes were made to R.C. 2903.214(G)(1). *See* Sub.H.B. 1, 2018 Ohio Laws 59, effective July 6, 2018 (a "composite" version, *see* Sub.H.B.1, section 3); Sub.H.B. 425, 2018 Ohio Laws 171, effective April 8, 2019 (making non-substantive changes to 2903.214(G)(2)0; Am.Sub.S.B. 288, 2022 Ohio Laws 160, effective April 4,

2023 (the current version, and again, with no changes to R.C. 2903.214(G)(1)).

{¶ 40} Accordingly, there would be no basis upon which to find that Civ.R. 65.1 is "clearly inapplicable" to R.C. 2903.214. The procedures in Civ.R. 65.1, therefore, would control. The presumption is well-established that "the General Assembly is fully aware of any prior judicial interpretation of an existing statute when enacting an amendment." *Clark v. Scarpelli*, 91 Ohio St.3d 271, 278, 744 N.E.2d 719 (2001), citing *State ex rel. Huron Cty. Bd. of Edn. v. Howard*, 167 Ohio St. 93, 96, 146 N.E.2d 604 (1957). The same reasoning would apply to judicial interpretation and application of Civil Rules. Had the legislature found fault with the application of Civ.R. 65.1 between 2016 and the present time, it could have amended R.C. 2903.214(G). However, it has not.

{¶ 41} Furthermore, no conflict exists, since R.C. 2903.214(G)(1) explicitly approves the use of the Civil Rules of Procedure in these actions. A review of the rest of R.C. 2309.214 also reveals nothing that conflicts with the decision to amend Civ.R. 65.1 in 2016 to preclude challenges to civil protection orders when an appellant fails to object to a trial court decision.

{¶ 42} The final consideration is whether a plain error analysis applies in these cases. Appellate districts, including our own, have rejected plain error review because Civ.R. 65.1 "is distinct from Civ.R. 53. Under Civ.R. 65.1 there is no provision for an appellate court's plain error review in the absence of objections as contained in Civ.R. 53(D)(3)(b)(iv)." *Becker v. Harnar*, 12th Dist. Warren No. CA2019-06-064, 2020-Ohio-3234, ¶ 10.

{¶ 43} To the same effect is *J.S.,* 7th Dist. Mahoning No. 17 MA 0032, 2017-Ohio-

7507, at ¶ 21 ("noting that "[t]here is no provision in Civ.R. 65.1 for an appellate court's plain error review in the absence of objections as contained in Civ.R. 53(D)(3)(b)(iv)"). *Accord Anderson*, 2d Dist. Montgomery No. 28277, 2019-Ohio-2346, at ¶ 8, citing *J.S.* at ¶ 21; *Straight v. Straight*, 11th Dist. Ashtabula No. 2020-A-0014, 2020-Ohio-4692, ¶ 32, citing *J.S.* at ¶ 21 ("plain error analysis is not permissible in an appeal from a civil protection order"). *See also M.K. v. A.C.K.*, 5th Dist. Fairfield No. 2019 CA 00023, 2020-Ohio-400, ¶ 17 (rejecting plain error review where party failed to provide a basis for deviating from the guidance of other appellate districts). *But see A.K. v. G.K.*, 9th Dist. Medina No. 21CA0011-M, 2022-Ohio-2250, ¶ 9 (in DVCPO case where appellant failed to object, the court of appeals considered his argument that the trial court committed plain error in finding he had invoked his Fifth Amendment rights. However, plain error was rejected because the appellant failed to present "any argument explaining how the alleged error undermined the legitimacy of the judicial process," and the court refused to create one. The court did not explain why it felt plain error review applied.)

{¶ 44} We note that "[t]he plain error doctrine originated as a criminal law concept." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). "Prior to the adoption of Crim.R. 52(B), Ohio appellate courts would not consider 'any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' " *State v. Wolery*, 46 Ohio St.2d 316, 326, 348 N.E.2d 351 (1976), quoting *State v. Gordon*, 28 Ohio St.2d 45, 276 N.E.2d 243 (1971), *State v. Lancaster*, 25 Ohio St.2d 83, 267 N.E.2d 291 (1971), and *State v. Glaros*, 170 Ohio St.

471, 166 N.E.2d 379 (1960).

{¶ 45} However, this practice was "altered" by the 1973 adoption of Crim.R. 52(B), which "specifically provide[d] that '(p)lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' " *Wolery* at 327. In *Wolery*, the court stressed that "[t]he rule's purpose is to safeguard the right of a defendant to a fair trial, notwithstanding his failure to object in timely fashion to error at that trial. However, '(t)he plain error rule was intended to be and should be applied to serve rather than subvert the ends of justice. The rule is to be invoked only in exceptional circumstances to avoid a miscarriage of justice.' " *Id.* quoting *Eaton v. United States*, 398 F.2d 485, 486 (5th Cir.1968).

{¶ 46} Shortly after *Wolery* was decided, the Supreme Court of Ohio issued its often-cited decision in *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). In *Long*, the court held that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶ 47} "Although in criminal cases '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court,' Crim.R. 52(B), no analogous provision exists in the Rules of Civil Procedure." *Goldfuss*, 79 Ohio St.3d at 121, 679 N.E.2d 1099. To this point, the Ohio Rules of Civil Procedure were first adopted in 1970, and prescribed procedures "to be followed in all courts of this state in the exercise of civil jurisdiction at law or in equity * * *." Civ.R. 1(A). An exception existed, as noted, for special statutory proceedings, "provided, that where any statute

provides for procedure by a general or specific reference to all the statutes governing procedure in civil actions such procedure shall be in accordance with these rules." Civ.R.1(C)(8).

{¶ 48} Unlike Crim.R. 52, the Ohio Civil Rules did not provide for plain error review. Instead, Civ.R. 51(A) stated, in the context of jury instructions, that "[o]n appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." This was consistent with practice before Crim.R. 52(B) was adopted, where, as noted, appellate courts refused to consider error when no objection was made in the trial court.

{¶ 49} The Ohio Civil Rules did include a provision concerning "harmless error" in Civ.R. 61. This rule stated that:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

{¶ 50} While this rule refers to "substantial rights," it does not adopt the plain error doctrine; instead, Civ.R. 61 simply refers to situations in which error is harmless and can

be overlooked because it does not substantially affect a litigant's rights. Again, before plain error was established, courts did not consider error unless objections were made at the trial court level. Consistent with the fact that nothing changed from this prior practice, the 1970 Staff Notes to Civ.R. 61 indicate that "Rule 61 is similar to § 2309.59, R.C., the statute which has governed matters of harmless error." R.C. 2309.59 was enacted in 1986 and contains essentially the same language as its predecessor statute, G.C. 11364. *See Pearson v. Gardner Cartage Co.*, 148 Ohio St. 425, 448, 76 N.E.2d 67 (1947).

{¶ 51} In *Pearson*, the court quoted G.C. 11364, which provided that "[i]n every stage of an action, the court shall disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party."[2] Notably, neither R.C. 2309.59 nor G.C. 11364 made any reference to "plain error."

{¶ 52} In the context of civil cases, the first specific mention of the term "plain error" occurred in *Singfield v. Thomas*, 28 Ohio App.2d 185, 187, 275 N.E.2d 644 (9th Dist.1971). That case involved a "general objection" to jury instructions. Citing Civ.R. 51(A), the court held that this general objection precluded review of alleged errors concerning the instructions. *Id.* at 186-187. The court did comment that "some federal appellate courts have exercised the power to consider 'plain error' in instructions, even though not objected to." *Id.* at 187. However, the court did not further address the point, concluding that "such a case involving the 'plain error' rule has not been presented for our consideration." (Citation omitted.) *Id.*

---

[2] G.C. 11364 "was (formerly Sec. 5115 R. S.)," which also contained the same language about disregarding error that did not affect a party's substantial rights. *Mahoning Valley Ry. v. Seefred*, 19 Ohio C.C.(N.S.) 262, 1911 WL 783, *3 (Dec. 26, 1911). *See also Bear v. Knowles*, 36 Ohio St. 43, 45 (1880), quoting R.S. 5115.

{¶ 53} Shortly after the Supreme Court of Ohio issued its 1978 decision in *Long*, the Eighth District Court of Appeals considered its power to "sua sponte" notice plain error in a civil case, even though the appellant had not raised the error. The basis for considering this issue was the Eighth District's belief that the trial court's judgment was against the manifest weight of the evidence. *Natl. City Bank v. Patton*, 8th Dist. Cuyahoga No. 37730, 1978 WL 218182, *4 (Oct. 26, 1978). In discussing the issue, the court of appeals remarked that:

> The Ohio Supreme Court has recently interpreted the circumstances under which plain error can be noticed by an appellate court, *sua sponte*. Although the court was dealing with a criminal appeal and the plain error rule of the Criminal Rules of Procedure, we feel that their reasoning, as applied to a criminal appeal, is sufficiently analogous to our situation.

*Id.*, discussing *Long*, 453 Ohio St.2d at 97, 372 N.E.2d 804.

{¶ 54} Deciding that error could be noticed "sua sponte" was somewhat overstated, since appellate courts have limited ability to raise error on their own motion. Typically this is reserved for issues like subject matter jurisdiction, which appellate courts can raise on their own motion. *E.g., State ex rel. White v. Cuyahoga Metro. Hous. Auth.*, 79 Ohio St.3d 543, 544, 684 N.E.2d 72 (1997). Generally, if matters come to light that the parties have not raised, the appropriate course is to allow additional or supplemental briefing. *See State v. Winston*, 4th Dist. Scioto No. 96CA2419, 1997 WL 802808, *7 (Dec. 17, 1997) (court had ordered parties to address matter appellant did not raise); *State ex rel. Maxcy v. Saferin*, 155 Ohio St.3d 496, 2018-Ohio-4035, 122 N.E.3d 1165,

¶ 28 (Fischer, J., dissenting) (noting court had "previously sua sponte ordered additional briefing on an issue that came to light after the initial briefing was complete"); *State v. Young*, 2d Dist. Montgomery No. 23438, 2010-Ohio-5157, ¶ 208 (court had ordered parties to file supplemental briefs on merger issue that appellate court had noticed).

{¶ 55} In any event, after *Patton*, a few other appellate courts reviewed for civil plain error, but this practice was not widespread. *E.g., Hey v. Indianapolis & Southeastern Trailways, Inc.*, 1st Dist. Hamilton No. C-780393, 1979 WL 208743, *1 (Aug. 22, 1979).

{¶ 56} The Supreme Court of Ohio's first specific discussion of plain error in the civil context occurred in 1982. *See Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 436 N.E.2d 1001 (1982).[3] In *Schade*, the defendant (who had hit the plaintiff while driving) prevailed at trial. However, the court of appeals reversed, based "on the rationale that there was no evidence to support the issue of contributory negligence, thereby rendering such instruction improper." *Id.* at 208. The defendant then appealed to the Supreme Court of Ohio, claiming that " '[w]here a party has specifically waived all objections to jury instructions requested by the opposing party, an Appeals Court may not base reversal of a jury verdict on a jury instruction given pursuant to that waiver.' " *Id.* at 207.

{¶ 57} In considering this issue, the Supreme Court of Ohio first remarked on

---

[3] The Supreme Court of Ohio had previously discussed a possible "exception" to Civ.R. 51(A), which involved the "basic fairness, integrity, or public reputation of the judicial process," but did not refer to it as "plain error." *Yungwirth v. McAvoy*, 32 Ohio St.2d 285, 288, 291 N.E.2d 739 (1972). The court noted the reluctance of federal courts to apply this exception and concluded the exception did not apply, anyway, to the case before it.

Civ.R. 51(A)'s prohibition of assigning error where a party has failed to object to a jury instruction. *Id.* at 209. However, the court then noted *Long's* exception for "plain error" and held that "[i[t follows that if this limiting principle is applicable to a criminal action, it is also valid in a civil case." *Id.*, citing *Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus. Ultimately, the court found that the plaintiff would not have been able to successfully raise plain error on appeal because sufficient evidence existed to warrant an instruction on contributory negligence. *Id.* The court also said that "even if it was proper to consider the charge on appeal, the appellate court erred in concluding there was insufficient evidence to justify the charge." *Id.* The court, therefore, reversed the judgment of the court of appeals. *Id.* at 110-111.

{¶ 58} While *Schade* did not apply "plain error" in favor of the party who failed to object, the court clearly indicated that this doctrine was not just limited to criminal cases but could be raised in civil cases as well. And thereafter, the court allowed plain error to be asserted in civil cases. *E.g., Reichert v. Ingersoll*, 18 Ohio St.3d 220, 223, 480 N.E.2d 802 (1985) (finding " 'plain error' to remedy a manifest miscarriage of justice"), and *State ex rel. Target Auto Repair v. Morales*, 168 Ohio St.3d 88, 2022-Ohio-2062, 195 N.E.3d 1027, ¶ 15-16 (finding no plain error).

{¶ 59} The point of the above discussion is that plain error is not a right created by statute nor is it a fundamental or unlimited right. It is a court-devised doctrine that originated in criminal cases and was later extended to civil matters. In these situations, "the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the

trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss*, 79 Ohio St.3d 116, 679 N.E.2d 1099, at syllabus.

{¶ 60} As indicated, Civ.R. 53 currently allows plain error to be asserted when a party fails to object to a magistrate's decision. In the original version of Civ.R. 53, which was adopted on July 1, 1970, "a party did not, by failing to file an objection, waive the right to assign as error on appeal the adoption by a trial court of a finding of fact or conclusion of law of a referee." Staff Notes for the 2003 amendments to Civ.R. 53, citing *Normandy Place Assocs. v. Beyer*, 2 Ohio St.3d 102, 103, 443 N.E.2d 161 (1982), paragraph one of the syllabus. However, by the time of the amendments that took place in 1995, the waiver rule applied "to both findings of fact and conclusions of law, * * * and represente[d] a complete reversal of the no waiver position of the original Civ. R. 53." *Id.*, citing *State ex rel. Booher v. Honda of Am. Mfg., Inc.*, 88 Ohio St.3d 52, 723 N.E.2d 571 (2000).

{¶ 61} While noting these issues, the 2003 amendments did not change the rule's substantive content; instead, the court divided then Civ.R. 53(E) into subsections that would highlight the objection and waiver provisions and also added a sentence to Civ.R. 53(E)(2) requiring "that a magistrate who files a decision which includes findings of fact and conclusions of law also provide a conspicuous warning that timely and specific objection as required by Civ. R. 53(E)(3) is necessary to assign as error on appeal adoption by the trial court of any finding of fact or conclusion of law." *Id.* This was deemed necessary because "the original version of Civ. R. 53 imposed no waiver at all

and even the 1985 version imposed waiver only as to findings of fact by referees." *Id.*

{¶ 62} Before the 2003 amendments, Ohio courts of appeals had allowed plain error to be considered where a party failed to object to a magistrate's decision. *E.g., Brown v. Zurich US*, 150 Ohio App.3d 105, 2002-Ohio-6099, 779 N.E.2d 822, ¶ 27 (10th Dist.); *R.G. Real Estate Holding, Inc. v. Wagner*, 2d Dist. Montgomery No. 16737, 1998 WL 199628, *3 (Apr. 24, 1998). At that time, there were no Supreme Court decisions on this point.

{¶ 63} However, when Civ.R. 53 was amended in 2006, the Supreme Court of Ohio did choose to add "plain error" as an exception to the waiver of error where a party failed to object to a magistrate's report. The 2006 Staff Notes do not provide a specific explanation for the change, but simply state that "[a]n exception to the 'waiver rule' exists for plain error, which cannot be waived based on a party's failure to object to a magistrate's decision."

{¶ 64} Subsequently, when Civ.R. 65.1 was adopted in 2012, the court chose not to include plain error as an exception to waiver. The court did allow parties to either immediately appeal or file objections, however. After the rule was adopted, some courts did allow plain error to be considered. This makes sense, since objections did not even have to be filed in the trial court. *See Croone v. Arif,* 8th Dist. Cuyahoga No. 101103, 2014-Ohio-5546, ¶ 13 and 28; *J.B. v. Harford*, 9th Dist. Summit No. 27231, 2015-Ohio-13, ¶ 4 and 37-44; *Wulf v. Opp*, 12th Dist. Clermont No. CA2014-10-074, 2015-Ohio-3285, ¶ 16-17.

{¶ 65} However, as noted, the court later amended Civ.R. 65.1, effective July 1,

2016. At that time, the court eliminated a party's choice to either immediately appeal or file objections. Instead, the amendments required parties to object to the trial court's decision before filing an appeal. Again, the court chose not to include a plain error exception. At that point, the Supreme Court of Ohio would have been aware of its prior choice to add a plain error exception to Civ.R. 53. However, no similar exception was granted for Civ.R. 65.1.

{¶ 66} Based on the court's elimination of the right to immediately appeal rather than filing objections, and its choice not to include a plain error exception, the only logical conclusion we can reach is that the court did not agree that plain error review should be applied in cases involving Civ.R. 65.1. Again, plain error is a court-created doctrine, and even at its best, applies only in extraordinary circumstances.

{¶ 67} In light of the preceding discussion, and to clarify and summarize the analysis that should occur in Civ.R. 65.1 appeals, we hold that: (1) where litigants fail to comply with Civ.R. 65.1(G)'s requirement of filing objections, they cannot challenge the trial court's decision on appeal, and the decision must be affirmed; (2) no issues that are raised, whether they are phrased as error or plain error, can be considered; (3) this court should not engage in any analysis that directly or indirectly involves the merits of the trial court order; (4) where a litigant has objected in the trial court as specified by Civ.R. 65.1, this court retains the ability to consider error that is raised on appeal, including plain error, if the latter type of error is raised by a party. *See Moyer v. Robinson*, 11th Dist. Lake No. 2022-L-043, 2023-Ohio-764, ¶ 17 (objections were filed in the trial court, but the court of appeals refused to consider plain error because the appellant failed to raise such error

on appeal); and (5) when a party fails to file objections, the court of appeals cannot consider or cite the content of the transcript. *But see Brent*, 2d Dist. Montgomery No. 29624, 2023-Ohio-1068, at ¶ 4 (citing from trial transcript in a case where appellant failed to object under Civ.R. 65.1).

{¶ 68} Accordingly, because Bettison failed to file objections in the trial court, we will not consider his assignments of error. Without having filed timely objections in the trial court, Bettison is not permitted to appeal the trial court's decision. The judgment of the trial court therefore is affirmed.

. . . . . . . . . . . . .


LEWIS, J. and HUFFMAN, J., concur.